UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE COTE

OSCAR DE LA RENTA, LTD.,

       Plaintiff,

      v.

ELIZABETH ARDEN, INC., d/b/a
"EA FRAGRANCES CO.",

       Defendant.

Civil Action No.

**08 CIV 5785**

**JURY TRIAL DEMANDED**

RECEIVED
JUN 27 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiff Oscar de la Renta, Ltd. ("ODLR"), by its attorneys Ropes & Gray LLP, as and

for its complaint herein against defendant Elizabeth Arden, Inc., in its own name and d/b/a

EA Fragrances Co. ("Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

1.    This is an action for trademark infringement and false designation of origin under

Section 32 of the Lanham Act, 15 U.S.C. § 1114 and Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), 15

U.S.C. § 1125(a), trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C.

§ 1125(c), trademark dilution under New York General Business Law § 360-*l*, and unfair trade

practices under New York law.

## PARTIES

2.    Plaintiff Oscar de la Renta, Ltd. is a corporation organized and existing under the

laws of the State of New York and having its principal place of business at 550 Seventh Avenue,

New York, New York, 10018.

3.     Upon information and belief, Defendant Elizabeth Arden, Inc. is a corporation incorporated under the laws of the State of Florida and having its principal place of business at 2400 S.W. 145th Ave., Miramar, Florida, 33027.

4.     Upon information and belief, "EA Fragrances Co." is a trade name used by Defendant Elizabeth Arden, Inc.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332, 1338 and 1367, and under 15 U.S.C. § 1121.

6.     Upon information and belief, venue is proper in this district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Defendant may be found in this district.

## FACTUAL ALLEGATIONS

7.     ODLR is the owner of the famous OSCAR DE LA RENTA trademark and trademark name along with related marks, including OSCAR and a mark consisting of Oscar de la Renta's signature (hereinafter, collectively, "the ODLR Marks"), which have come to be associated with various "prestige" products throughout the world.

8.     ODLR produces, either on its own or through various licensees, high-fashion clothing, ready-to-wear clothing, handbags and other accessories, sportswear, shoes, jewelry, eyewear, home goods, bridal gowns, furs, fragrances, and various other products.

9.     ODLR is the direct or beneficial owner of numerous trademark registrations of various of the ODLR Marks issued by the United States Patent and Trademark Office and by numerous foreign trademark offices. The U.S. registrations include Registration Nos. 0922367, 1081451, 1085216, 1334456, 1950895, 1957411, 2119455, 2132134, 2510354, 2553215,

2

2702388, 2928221, 3046554, 3108953, 3283357, 3303388, 3307716, and 3352817. These registrations are valid and subsisting.

10.     ODLR also owns all common law trademark and trade name rights associated with the ODLR Marks as well as all rights in all trade dress used in conjunction with the ODLR Marks.

11.     For the past several decades, ODLR has licensed the right to use and make use of the ODLR Marks, including but not limited to, the marks shown in U.S. Registration Nos. 1081451 and 1085216, in connection with perfumery, fragrances, essential oils, toiletries, cosmetics, hair lotions, and soaps. A copy of that License is attached hereto as Exhibit A (hereinafter "the License"). Copies of the Certificates of Renewal for U.S. Registration Nos. 1081451 and 1085216 are attached hereto as Exhibits B and C.

12.     ODLR's fragrances are produced in France and sold in the United States today by non-party YSL Beauté, Inc. ("Licensee"), the successor-in-interest to the original licensee, Milton Stern Parfums, Inc.

13.     Although U.S. Registration Nos. 1081451 and 1085216 are registered in the name of the Licensee, Section 3 of the License makes clear that ODLR is the beneficial owner of the registrations and that said registrations are held in trust by the Licensee for the duration of the License.

14.     As the direct and/or beneficial owner of all of the ODLR Marks, ODLR has standing and authority to bring suit to enforce its rights in those marks and ODLR's distinctive trade dress.

15.     In late 2007, ODLR discovered an unauthorized fragrance product being distributed by Defendant under the trade name, "EA Fragrances Co." at mass retail Wal-Mart

3

stores. The product consisted of a 4 ml bottle labeled "*parfum*" (the "Unauthorized Product").

Photographs of the Unauthorized Product are attached hereto at Exhibit D. While ODLR

previously had authorized the distribution of a 4 ml fragrance product as a free sample or gift

with purchase of other ODLR products (the authorized packaging for the 4 ml fragrance product

appears on the left side of the photographs which are attached hereto at Exhibit E), it has never

authorized the separate commercial sale of such a product. Sale of such a product is inconsistent

with the image and reputation of ODLR and its licensed fragrance products.

16.     The Unauthorized Product was packaged with trade dress (the "Infringing Trade

Dress") bearing the ODLR Marks and designed to simulate the distinctive trade dress of

approved OSCAR DE LA RENTA fragrance products. The Infringing Trade Dress also bore the

text "© EA FRAGRANCES CO., DIST., NEW YORK, NY 10003," implying that ODLR

approved, endorsed, or was affiliated with Defendant's business, or that Defendant was

otherwise authorized to use the valuable ODLR Marks in its business. The Infringing Trade

Dress is depicted in the photographs attached at Exhibit D and on the right hand side of the

photographs attached at Exhibit E.

17.     ODLR has never authorized the use, on any licensed fragrance product, of the

Infringing Trade Dress. Nor has ODLR's Licensee.

18.     Upon information and belief, Defendant's sales and distribution of the

Unauthorized Product has been widespread and substantial and may involve retailers in addition

to Wal-Mart.

19.     The commercial sale of the Unauthorized Product and the use of the Infringing

Trade Dress violate ODLR's rights in its valuable trademarks and distinctive trade dress and are

inconsistent with, and damaging to, the reputation of ODLR.

20.    On January 18, 2008, ODLR wrote to Defendant and demanded, *inter alia*, that Defendant cease and desist from further sale and distribution of the Unauthorized Product and further use of the Infringing Trade Dress.

21.    Defendant replied on January 28, 2008, admitting its sale and distribution of the Unauthorized Product and use of the Infringing Trade Dress.

22.    To date, Defendant has not ceased the sale and distribution of the Unauthorized Product.

23.    At some time after January 28, 2008, Defendant modified the Infringing Trade Dress. The modified Infringing Trade Dress (the "Modified Infringing Trade Dress") is labeled "Designer Fragrance Collectible" in proximity to the ODLR Marks and, on the reverse side, states: "THIS GENUINE OSCAR PRODUCT HAS BEEN REPACKAGED IN THE U.S. BY EA FRAGRANCES, CO., NEW YORK, NY 10003, A COMPANY NOT AFFILIATED WITH OSCAR DE LA RENTA, LTD." A photograph showing one such product is attached hereto as Exhibit F.

24.    The continued commercial sale of the Unauthorized Product and the use of the Modified Infringing Trade Dress violate ODLR's rights in its valuable trademarks and distinctive trade dress and are inconsistent with, and damaging to, the reputation of ODLR. Defendant's modification of the Infringing Trade Dress in question in no way eliminates or lessens that infringement or that damage to ODLR.

25.    The acts and conduct of Defendant complained of herein have damaged ODLR and, unless restrained, will impair, if not destroy, the value of the ODLR Marks and ODLR's trade dress and the goodwill associated therewith.

26.    ODLR has no adequate remedy at law for such damage to its valuable intellectual property.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND FALSE DESIGNATION
## OF ORIGIN UNDER THE LANHAM ACT

27.    ODLR incorporates by reference the allegations in paragraphs 1-26 as if fully restated.

28.    The acts and conduct of Defendant complained of herein constitute trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1114 and § 1125(a).

29.    ODLR has suffered and continues to suffer irreparable injury thereby.

30.    ODLR has no adequate remedy at law.

31.    ODLR has suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## UNFAIR COMPETITION UNDER THE LANHAM ACT

32.    ODLR incorporates by reference the allegations in paragraphs 1-26 as if fully restated.

33.    The acts and conduct of Defendant complained of herein constitute willful unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

34.    ODLR has suffered and continues to suffer irreparable injury thereby.

35.    ODLR has no adequate remedy at law.

36.    ODLR has suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## TRADEMARK DILUTION UNDER THE LANHAM ACT

37.      ODLR incorporates by reference the allegations in paragraphs 1-26 as if fully restated.

38.      The ODLR Marks are famous and distinctive and have been so for many years prior to the first sale of an Unauthorized Product by Defendant.

39.      The acts and conduct of Defendant complained of herein constitute dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

40.      ODLR has suffered and continues to suffer irreparable injury thereby.

41.      ODLR has no adequate remedy at law.

42.      ODLR has suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## STATE LAW TRADEMARK DILUTION

43.      ODLR incorporates by reference the allegations in paragraphs 1-26 and 38 as if fully restated.

44.      The acts and conduct of Defendant complained of herein constitute dilution under New York General Business Law § 360-*l*.

45.      ODLR has suffered and continues to suffer irreparable injury thereby.

46.      ODLR has no adequate remedy at law.

47.      ODLR has suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## STATE LAW UNFAIR TRADE PRACTICES

48.      ODLR incorporates by reference the allegations in paragraphs 1-26 as if fully restated.

49.     The acts and conduct of Defendant complained of herein constitute unfair trade practices under New York law.

50.     ODLR has suffered and continues to suffer irreparable injury thereby.

51.     ODLR has no adequate remedy at law.

52.     ODLR has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, ODLR demands judgment in its favor, as follows:

1.     Granting a preliminary and permanent injunction against Elizabeth Arden, Inc. (in its own name and in the name of "EA Fragrances Co."), its agents, servants, employees, and attorneys, and all persons in active concert and participation with them or any of them, enjoining and restraining them from (a) sale or distribution of the Unauthorized Product; (b) use of the Infringing Trade Dress or the Modified Infringing Trade Dress; and (c) use in their business or in connection with the advertising, offering for sale, sale or distribution of fragrance or beauty products, the ODLR Marks or any other word, name, symbol, or device incorporating the names "Oscar" or "Oscar de la Renta" or likely to cause confusion with Oscar de la Renta Ltd. or the well-known designer Oscar de la Renta;

2.     Granting ODLR its costs and disbursements and reasonable attorneys' fees; and

3.     Granting any other, further, or different relief in favor of ODLR that this Court deems just and proper.

8

Dated:  New York, New York
       June 26, 2008

ROPES & GRAY LLP

By:  William I. Sussman
     Carla E. Sereny
     1211 Avenue of the Americas
     New York, NY 10036
     (212) 596-9000
     william.sussman@ropesgray.com
     carla.sereny@ropesgray.com
     *Attorneys for Plaintiff*

OF COUNSEL:

Peter M. Brody
W. Rudolph A. Kleysteuber IV
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, D.C. 20005
(202) 508-4600
peter.brody@ropesgray.com
rudy.kleysteuber@ropesgray.com

Exhibit A

AGREEMENT made as of the 18th day of August, 1977, between OSCAR DE LA RENTA, residing at 2 East 70th Street, New York, New York, OSCAR DE LA RENTA, LTD., a New York corporation having a place of business at 550 Seventh Avenue, New York, New York 10018 (hereinafter "ODLR"), and PARFUMS STERN INC., a New York corporation having a place of business at 40 West 57th Street, New York, New York 10019 (hereinafter "Licensee").

## W I T N E S S E T H :

WHEREAS, Oscar de la Renta is a shareholder of ODLR and has acquired a wide reputation, symbolized by his name, as a designer, creator and innovator in the fashion and fashion-related fields; and ODLR presently has the exclusive rights to his talents and creative energies and has moreover obtained and presently owns, subject to the rights heretofore granted to Licensee under the agreement referred to in the next paragraph, the exclusive rights to his name as a trademark or otherwise for the particular goods to which this agreement relates; and

WHEREAS, by Agreement dated April 1, 1976 Milton Stern Parfums, Inc. acquired the sole and exclusive licensed use of the name and trademark Oscar de la Renta as more fully defined in paragraph 1 below (hereinafter "Licensed Mark") in respect of the Licensed Products (as defined in paragraph 1), for any and all countries and geographical areas of the world, which License Agreement was assigned to and assumed by Licensee pursuant to an Assignment and Assumption Agreement dated July 22, 1977; and

WHEREAS, the parties hereto desire to amend and restate the License Agreement as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises of the parties, it is agreed as follows:

1.     ODLR hereby grants Licensee the right in the United States, Canada and France (hereinafter the "Territory") to use and make use of Licensed Mark (which shall include the full name Oscar de la Renta or the initials ODLR in plain or any stylized type or in any script, written or signature form, or the separable components Oscar, de la Renta, or Renta, as well as such other words or symbols with which the name Oscar de la Renta shall be or become associated in the public mind unless ownership of or the exclusive right to use such other words or symbols shall be in another licensee of ODLR) as exclusive licensee and/or authorized user upon or in relation to perfumery, fragrances, essential oils, toiletries, cosmetics, hair lotions, and soaps, it being intended to include perfumery, beauty and toiletry preparations of all kinds (hereinafter "Licensed Products," shall mean any of the aforesaid products bearing Licensed Mark), provided that such goods shall be made in accordance with reasonably high standards as to product quality and merchantability as reasonably approved by ODLR from time to time and as hereinafter set forth.  Oscar de la Renta hereby consents to such license and to the use by Licensee of his name as Licensed Mark as aforesaid.  While this agreement remains in force, Licensee shall be the sole licensee and enjoy the rights of exclusive user of the Licensed Mark in the Territory on the Licensed Products.  Licensee shall use its best efforts to exploit and publicize Licensed Mark and to promote the sale of Licensed Products in the countries comprising the Territory.

-2-

2.     (a)     In the United States the Licensed Mark shall stand of record in the name of Licensee.  The parties acknowledge that to date the trademarks Oscar and Oscar de la Renta of Registration Nos. 1081451 and 1085216 are presently registered in the Patent and Trademark Office in Washington, D.C. in the name of Milton Stern Parfums, Inc. but contemporaneously with the execution and delivery hereof such trademarks, and the registrations thereof, together with the goodwill of the business as symbolized thereby, are being assigned to Licensee pursuant to an Assignment in the form of Exhibit "1" hereto.

(b)     For as long as the record ownership of Registration Nos. 1081451 and 1085216 shall remain in Licensee, it shall use the marks thereof under and in accordance with ODLR's quality controls and other provisions as to trademark use as set forth in this agreement.  Upon termination of this agreement, all of ODLR's rights, title and interest in and to the trademarks Oscar and Oscar de la Renta and the Registration Nos. 1081451 and 1085216 thereof shall immediately revert to ODLR or its assigns together with the goodwill of the business as symbolized by the marks thereof, and Licensee shall thereupon forthwith furnish to ODLR or its assigns a separate assignment document in its favor in form and execution suitable for recordal at the Patent and Trademark Office in Washington, D.C. Licensee shall not transfer or assign the trademarks Oscar and Oscar de la Renta or the Registration Nos. 1081451 and 1085216 thereof except to transfer and assign the same to ODLR or its assigns as provided in this paragraph 2(b).  To insure the reversion to ODLR or its assigns of the trademarks Oscar and Oscar de la Renta and Registration Nos. 1081451 and 1085216, as herein provided, Licensee shall executed an irrevocable assignment thereof within thirty (30) days of the date of this agreement (in the form of Exhibit "2" hereto), together with an irrevocable power of attorney, appointing ODLR, Oscar de la Renta and Gerald Shaw, or the survivors or survivor of them, ODLR's attorney in fact to execute any and all

-3-

documents deemed necessary to fully insure reversion to ODLR or its assigns of the said trademarks, a copy of which power of attorney is attached hereto as Exhibit "3", which executed assignment and power of attorney shall be forwarded to ODLR's attorney, Frank A. Wortmann, Esq., 60 East 42nd Street, New York, New York 10017, who shall hold the same in escrow during the term of this agreement unless ODLR or its assigns makes demands on Frank A. Wortmann to deliver the assignment and powers of attorney to it, in which event on ten (10) days written notice to Licensee, the same shall be delivered to ODLR or its assigns. In addition, Licensee shall also deliver to Frank A. Wortmann a certified copy of resolutions adopted by the Board of Directors of Licensee authorizing the granting of such power of attorney.

(c)    Licensee agrees that in Canada and France it will file and prosecute applications to register Licensed Mark therein as agent for and in the name of ODLR, and to take all reasonable steps to renew, protect and enforce any registrations of Licensed Mark thus obtained including but not limited to applying for and recording Licensee or its designee as registered user or the equivalent in any country where in the opinion of Licensee's legal counsel it shall be necessary to do so.  ODLR agrees that it will execute and furnish such proper powers of attorney or other documents as Licensee or Licensee's legal counsel shall request and as approved by ODLR's legal counsel, which approval shall not be unreasonably withheld or delayed, in order to accomplish the foregoing.  The parties acknowledge that to date the trademark Oscar de la Renta of Registration No. 960468 has been registered in the name of ODLR in France and that applications for registration of the trademarks OSCAR (Application Pending – Serial No. 408726) and Oscar de la Renta (Application Pending – Serial No. 403031) in the name of ODLR have been made in Canada.

-4-

(d)    The costs to be incurred as a result of the provisions of this paragraph 2 shall be borne by Licensee in Canada and France.    ODLR, at its expense will apply for and register the Licensed Mark with respect to the Licensed Products in the United States and, at its expense, from time to time on notice from Licensee, shall renew, protect and enforce the registrations thus obtained.

3.    (a)    If Licensee shall reasonably believe that a third party's use and/or application or registration of words or symbols, as a trademark or otherwise in the United States, whether in relation to goods or in advertising or publicity matter, is so close to Licensed Mark in respect to Licensed Products as to cause confusion therewith or result in a dilution of the distinctiveness thereof, then Licensee shall inform ODLR thereof in writing and request that ODLR as the beneficial trademark owner bring suit or take such other action in the name of Licensee, as Licensee shall direct, before any court or Patent Office to halt or suppress such objectionable use, application or registration, whether or not ODLR is joined therein as party plaintiff or opposer.    Within five (5) days of receipt of Licensee's notice and request as aforesaid, ODLR shall notify Licensee in writing of its decision as to whether or not it will take the action requested by Licensee. If Licensee and ODLR disagree as to Licensee's request, then the question of whether the proposed action has a reasonable chance for success in terms of preserving the distinctiveness of Licensed Mark so as to prevent confusion therewith and/or dilution thereof, shall be submtted to the law firm of Kenyon & Kenyon Reilly Carr & Chapin, 59 Maiden Lane, New York, New York, or if that firm is unavailable, the law firm of Fish & Neave, 277 Park Avenue, New York, New York, or if neither such firm is available such other law firm in New York, New York, as shall be agreed upon by Licensee and ODLR (hereinafter such firm to which the matter is submitted shall be referred to as the "Outside Firm").    The

-5-

decision of the Outside Firm shall be final and binding on ODLR and Licensee. If the Outside Firm renders a decision that the proposed action has a reasonable chance of success, then the same shall be deemed a "Significant Infringement" and the following procedure shall be followed:

(i)    ODLR may, but shall not be obligated to, institute judicial or administrative action to halt, suppress or otherwise dispose of any third party's Significant Infringement within 30 days of the receipt of a request to do so by a notice from Licensee or within 15 days of the decision of the Outside Firm, if the matter was submitted to the Outside Firm. ODLR agrees to actively prosecute such action in good faith and with reasonable dispatch.

(ii)   If ODLR shall fail to actively pursue a Significant Infringement as aforesaid within the applicable 30 or 15 day period, as the case may be, Licensee shall have the right, but not the obligation, to elect, in its name and/or ODLR's name, to institute judicial or administrative action toward halting, suppressing or otherwise disposing of the Significant Infringement. Licensee agrees to actively prosecute any such action in good faith and with reasonable dispatch.

(iii)  Notwithstanding the foregoing provisions, Licensee shall have the right, but not the obligation, to take any action or to commence any suit against a third party if it reasonably believes that the third party has engaged in a Significant Infringement, prior to the submission of that question to the Outside Firm. If the Outside Firm renders a decision that a Significant Infringement occurred, then ODLR shall have the right, but not the obligation, to take over control of the action commenced by Licensee. In such case, ODLR agrees to actively

-6-

prosecute such action in good faith and with reasonable dispatch. In addition, ODLR shall reimburse Licensee for all reasonable legal costs theretofore incurred by it to suppress, halt or dispose of such Significant Infringement.

(iv)   The party undertaking the suit or action involving the Significant Infringement shall have the right to take charge thereof, including choice of counsel and tribunal. The party undertaking the suit or action shall not make any settlement without the consent of the other party, which consent shall not be unreasonably withheld or delayed. The costs incurred by Licensee or ODLR as a result of the provisions of this paragraph 3(a) shall be borne by ODLR, except ODLR shall not be obligated to pay any costs of Licensee if the matter is submitted to the Outside Firm and the Outside Firm renders a decision that the infringement is not a Significant Infringement. Nothing in this paragraph 3(a) shall prevent ODLR from authorizing Licensee to act on its behalf to undertake suit or other action against a third party. In such case, Licensee shall have full control over such action and all costs incurred by it shall be borne by ODLR. The party not in control of the action shall have the right, but not the obligation, to participate in any action brought under the provisions of this paragraph 3(a), at its own expense through counsel of its own choice.

(v)   If in any such suit or action prosecuted under this paragraph 3(a), money damages are awarded to ODLR or Licensee, ODLR shall be entitled to 50% of such total award (including any legal fees, if any, which are a part of such award) up to the total legal costs

incurred by ODLR to prosecute such suit or action. Licensee shall be entitled to retain the balance of any such award.

(b) If Licensee shall reasonably believe that a third party's use and/or application or registration of words or symbols as a trademark or otherwise in France or Canada, whether in relation to goods or in advertising or publicity matter, is so close to Licensed Mark in respect of Licensed Products as to cause confusion therewith or result in a dilution of the distinctiveness thereof, then Licensee shall be entitled to require ODLR as the trademark owner to bring suit or take such other action in its name as Licensee shall direct before any court or Patent Office to halt or suppress such objectionable use, whether or not Licensee be joined therein as party plaintiff or opposer. Licensee shall have full charge of and control over any such action, and any settlement thereof, including choice of counsel and tribunal. ODLR agrees to contribute toward the costs incurred as a result of the provisions of this paragraph 3(b), an amount equal to 25% of the legal costs incurred by Licensee in prosecuting such action (hereinafter the amount due to Licensee is referred to as the "ODLR Contribution"). Licensee shall bear all costs in excess of the ODLR Contribution. ODLR shall not be required to immediately reimburse Licensee for the ODLR Contribution, but Licensee shall offset the ODLR Contribution against future royalties payable by it to ODLR under paragraph 7 in respect of the net sales of the Licensed Products in the country in which such action arose, until the ODLR Contribution has been fully recovered by it. Notwithstanding the foregoing, if in any such suit or action prosecuted by Licensee under this paragraph 3(b), money damages are awarded to ODLR or Licensee, ODLR shall be entitled to 12-1/2% of such total award (including legal fees, if any, which are a part of such award) up to an amount equal to the ODLR Contribution. Licensee shall be entitled to retain the balance of any such award.

-8-

(c)  ODLR agrees that it will execute and furnish such powers of attorney or other documents as Licensee or Licensee's legal counsel shall request in order to accomplish the intent of paragraphs 3(a) and 3(b) above subject to approval of ODLR's legal counsel, which approval shall not be unreasonably withheld or delayed, and to cooperate fully with Licensee in any such actions. The provisions of this paragraph 3 shall not prohibit or restrict Licensee from taking any other or additional legal proceedings at its own expense against third parties to protect or enforce its rights and interests hereunder.

4.   Licensee undertakes that Licensed Products it sells will be of reasonably high standards as to product quality and merchantibility as reasonably approved by ODLR from time to time. To such end, ODLR shall have the right to approve of Licensed Products before any commercial use thereof, which approval shall not be unreasonably withheld or delayed, and at all reasonable times thereafter to receive samples of Licensed Products. Licensee agrees that it will use its best efforts to require any party that manufactures the Licensed Products to permit ODLR to inspect the manufacturing procedures on the manufacturing premises.

5.   Licensee agrees to submit to ODLR for approval and prior to any commercial use thereof by Licensee all proposed uses of bottles, containers, packaging, labels and advertising materials bearing or containing Licensed Mark, which approval shall not be unreasonably withheld or delayed. Within 30 days of any such submission (or 10 days if accelerated approval is requested and the item is marked in red "10 DAY ITEM") ODLR shall grant Licensee its permission or state in writing the reason for its refusal of permission. If Licensee shall not receive permission within such 30-day period (or within 10 days for "10 DAY ITEM") then

-9-

Licensee shall be entitled to proceed as if approval of ODLR had been furnished. Licensee shall not be required to resubmit materials for ODLR's approval in any case where Licensee shall have made non-material changes or variations.

6. Licensee is authorized to constitute and appoint any third party(ies) of its choice to be sub-licensee(s) of Licensed Mark in respect of any items of Licensed Products for any particular geographical area within the Territory, and upon such terms as Licensee in its sole discretion shall determine, except Licensee shall have no right to sub-license in the United States. Licensee will notify ODLR of the grant of any sub-license within 15 days of such grant. ODLR agrees that at Licensee's request, it will enter into such other and further separate agreements with sublicensee(s) of Licensee with respect to the Licensed Products, in such form as may be requested and proposed by Licensee's legal counsel and approved by ODLR's legal counsel, which approval shall not be unreasonably withheld or delayed, so as to grant its licensing authority directly to sub-licensee(s). It shall be Licensee's obligation as agent for ODLR to supervise the use of Licensed Mark by sub-licensee(s) and to require that such use be in accordance with the same reasonably high quality standards as approved by ODLR for Licensed Products sold by Licensee. Any sub-license entered into shall require the sub-license, to the extent applicable, to abide by the terms and conditions of this Agreement and shall restrict sales of the sub-licensee to areas within the Territory.

7. (a) In return for the rights herein granted, Licensee shall pay ODLR a royalty, computed on a yearly basis (as hereinafter indicated) on its net sales of Licensed Products in the Territory. The term "net sales" whenever used in this agreement means gross amounts received by Licensee for shipments in the

-10-

Territory less cash and trade discounts, returns, allowances and taxes directly applicable to the sales (such as sales, use, ad valorem or other similar taxes but not taxes based on Licensee's income). There shall also be excluded from net sales shipping costs, insurance costs, tariffs and duties to the extent stated separately on any invoice covering sales of Licensed Products as to which ODLR is entitled to be paid a royalty under this agreement. In computing Licensee's net sales there shall be included (i) net sales of Licensed Products of any sub-licensee or distributor in the Territory in which Licensee shall have any equity ownership (direct, indirect or beneficial) and (ii) any royalties or other revenues received by Licensee in respect of Licensed Products from any sub-licensee or distributor in the Territory in which Licensee does not have any equity ownership (direct, indirect or beneficial). In computing Licensee's net sales there shall be excluded net sales of Licensed Products by Licensee to or any royalties or other revenues received from any sub-licensee or distributor in the Territory in which Licensee shall have any equity ownership (direct, indirect or beneficial).

(b)  The royalties payable to ODLR shall be on an annual net sales basis equal to the following:

> 5% of the first $2,500,000 (or other currency equivalent) of net sales of Licensed Products in the Territory;

> 4% of the next $2,500,000 (or other currency equivalent) of net sales of Licensed Products in the Territory;

> 3% of the net sales of Licensed Products in the Territory over the first $5,000,000 (or other currency equivalent).

Licensee agrees to pay ODLR as a non-returnable advance against earned royalties, the following guaranteed minimum royalties:

(i)     During the year ending December 31, 1981 and each anniversary thereafter until December 31, 1985, the sum of $100,000 payable in equal quarterly installments of $25,000 on the 15th day of February, May, August and November in each such year.

(ii)     During the year ending December 31, 1986, the sum of $125,000 payable in equal quarterly installments of $31,250 on the 15th day of February, May, August and November of such year.

(iii)     During the years ending December 31, 1987 and each anniversary thereafter until December 31, 1990, the sum of $125,000 plus the cost of living adjustment increase as determined under paragraph 7(c). Such sum shall be paid in equal quarterly installments on the 15th day of February, May, August and November in each said year.

(iv)     During the years ending December 31, 1991 and each anniversary thereafter, the greater of (1) $150,000 or (2) $125,000 plus the cost of living adjustment increase as determined under paragraph 7(c). Such sum shall be payable in equal quarterly installments on the 15th day of February, May, August and November in each said year.

Whenever in any contract year (and for the purposes of this agreement a contract year shall be the same as a calendar year) the total royalties payments made by Licensee to ODLR are at least equal to the guaranteed minimum royalties for that contract year, Licensee's obligation to pay further quarterly advance royalty payments in that contract year shall cease.

-13-

(c)  In the event the Consumer Price Index (as hereinafter defined) for the 12 months ended December 31, 1986 (hereinafter said year is defined as the "Base Year") shall be less than the Consumer Price Index for any succeeding contract year ended December 31, during the term of this agreement, then, subject to clauses (iii) and (iv) of paragraph 7(b), Licensee shall pay ODLR, as additional guaranteed minimum royalties, payable quarterly as hereinbefore indicated, an amount equal to $125,000 multiplied by the percentage of increase by which the Consumer Price Index in such succeeding contract year(s) exceeds the Consumer Price Index for the Base Year.  For the purpose of this paragraph, the term "Consumer Price Index" means the Consumer Price Index - U.S. City Averages for Urban Wage Earners and Clerical Workers (All Items) of the United States Bureau of Labor Statistics.  The Consumer Price Index for any contract year shall be determined by averaging the monthly all items indices for that contract year.  If the manner in which such Consumer Price Index is determined by the Bureau of Labor Statistics shall be substantially revised, an adjustment shall be made in such revised index which would produce results equivalent, as nearly as possible, to those which would have obtained if the Consumer Price Index had not been so revised.  If the Consumer Price Index shall become unavailable to the public because publication is discontinued, or otherwise, ODLR and Licensee will substitute therefore a comparable index based upon changes in the cost of living or purchasing powers of the consumer dollars published by any other governmental agency or, if no such index shall be available, then a comparable index published by a major bank or other financial institution or by a university or a recognized financial publication.

(d)  Whenever in any quarter of any year ending December 31, the amount of royalties earned by ODLR exceeds the amount of the advance

payment for such quarter as specified in paragraph 7(b), the excess shall be paid by Licensee to ODLR within 30 days of the end of such quarter, except that Licensee shall be entitled to reduce the earned royalty payment for such quarter in an amount not to exceed the amount by which the advance royalties paid by Licensee in any preceding quarter or quarters on a cumulative basis during such year exceeds the total royalties actually earned on a cumulative basis for that quarter and all preceding quarters of that year. If in any contract year, Licensee shall have paid royalties to ODLR under paragraphs 7(b) and 7(d) in an amount which exceeds the greater of the (i) minimum guaranteed royalties for that contract year or (ii) royalties actually earned by ODLR for such contract year on a cumulative basis as computed under the provisions of this paragraph 7, then such excess payment shall be deducted by Licensee from the minimum guaranteed royalty payments and earned royalty payments for the subsequent year or years until repaid. Licensee shall provide ODLR with quarterly reports of its net sales of the Licensed Products in the Territory within 30 days after each quarter during the term of this agreement.

(e)     If Licensee shall receive any lump sum initial payment (as contrasted to payments related to shipments and sales) from any distributor or sub-licensee in the Territory as and for Licensee's grant of the distributorship franchise or the sub-license right with respect to the Licensed Products in the Territory (but excluding any such other payments from any distributor or sub-licensee in which Licensee or MILTON STERN shall have any equity interest, direct, indirect or beneficial), then Licensee shall pay over 25% of any such payment within 30 days of Licensee's receipt thereof, in the currency in which such payment shall have been received.

-14-

(f)   All royalties payable under this agreement shall be paid in U.S. dollars, except as provided in paragraph 7(e) and except that any royalties in countries from which royalties or other sums cannot be transferred, or converted into U.S. dollars, shall be payable to ODLR in local currency to ODLR's designee in the country concerned, subject to such government restrictions on transfer as then may be in force. The amounts of net sales effected in currencies other than U.S. dollars shall be converted, for the purpose of royalty calculation, into U.S. dollars at the official bank rate of exchange at the time Licensee shall make such payment. To the extent required by any governmental authority, royalty payments shall be made subject to withholding or comparable taxes at their source and subject to the laws of any such governmental authority, any tax so withheld shall inure to ODLR's benefit.

8.   During each contract year while this agreement shall be in force, commencing January 1, 1981, Licensee shall expend a sum on advertising equal to not less than 1-1/2% of the gross sales of the Licensed Products throughout the Territory during the preceding contract year.

9.   ODLR undertakes at Licensee's request to make Mr. de la Renta available at reasonable intervals and for reasonable periods (which shall involve one basic yearly event) for promotional and publicity tie-ins serving to associate him and his various fashion activities with Licensed Products.   Licensee shall be entitled to the use of Mr. de la Renta's name and likeness for advertising and promotional purposes upon his approval first being obtained, which approval shall not be unreasonably withheld or delayed.   ODLR shall make every reasonable effort, at the reasonable request of Licensee, to arrange for Mr. de la Renta's cooperation for publicity photographs, radio and TV interviews, and at his sole

discretion such additional events as personal appearances, fashion shows, and dinners. Licensee shall reimburse Oscar de la Renta for his first-class travel, lodging, food and other related expenses outside New York City incurred by him in connection with any events attended by him to satisfy his obligations under this paragraph.

10. Licensee shall maintain appropriate books of account at its head office in which accurate entries shall be made concerning all transactions within the scope of this agreement, and ODLR shall have the right upon reasonable advance notice and during reasonable business hours, through any accountant or other authorized representative of its choice, and at the expense of ODLR, to examine and take extracts from such books of account and all other records, documents and material in the possession or under the control of Licensee, with respect to the subject matter of this agreement. All such books of account shall be kept available by Licensee for at least two (2) years after the close of each reporting year.

11. Licensee hereby indemnifies and agrees to hold ODLR harmless from and against any claim, suit, loss and damage (including reasonable attorneys' fees) arising out of alleged defects in the material or workmanship of any Licensed Products sold by Licensee and its sub-licensees and distributors pursuant to the rights granted it hereunder. ODLR shall give to Licensee immediate notice of any such claim or suit and afford Licensee the opportunity to defend or settle the same, at its own expense, through counsel of its own choice. Licensee shall not be liable to indemnify ODLR for any settlement of any such claims or suit effected without Licensee's consent.

-16-

12.   Licensee shall procure and maintain at its own expense in full force and effect at all times during which Licensed Products are being sold, with responsible insurance carrier(s) acceptable to ODLR, at least a $1,000,000 products liability insurance coverage with respect to Licensed Products throughout the Territory. Such insurance shall be for the benefit of ODLR and Licensee and shall provide for at least ten days' prior written notice to ODLR and Licensee of the cancellation or substantial modification thereof. Such insurance may be obtained for ODLR by Licensee in conjunction with a policy of product liability insurance which covers products other than Licensed Products. Licensee shall from time to time upon reasonable request by ODLR, promptly furnish or cause to be furnished to ODLR evidence in form or substance satisfactory to ODLR, of the maintenance of the insurance as above required, including but not limited to, originals or copies of policies, certificates of insurance (with applicable riders and endorsements) and proof of premium payments.

13.   Licensee may elect, at its cost, to insure the life of Mr. Oscar de la Renta in an amount not to exeed $2,000,000 with Licensee as the beneficiary, with such insurance carrier and under such insurance plan as Licensee in its sole discretion may determine. Upon the termination of this agreement, Licensee shall cancel such insurance policy or at ODLR's request sell such policy to ODLR or its designee at the cash surrender value thereof. Should Licensee exercise such election, Mr. de la Renta agrees to make himself availabe for such medical and other examinations and to complete such applications as may be required by Licensee's insurance carrier to obtain such insurance.

14.   If Licensee is adjudicated a bankrupt, or if a petition in bank-ruptcy is filed against Licensee and not dismissed or vacated within 30 days of such

filing; or if Licensee makes any assignment for the benefit of creditors; or if Licensee takes the benefit of any insolvency law; or if Licensee defaults on any obligations which is secured by a security interest, in whole or in part, in Licensed Products and such default is not cured within a 30 day period; or if a receiver is appointed for Licensee or a substantial part of its business or assets, this agreement shall terminate upon 3 months' written notice by ODLR to Licensee.

15.  Licensee agrees that it will not, during the term of this agreement or thereafter, attack ODLR's title in and to the Licensed Mark or the validity thereof.  Licensee shall, whether during or after the term of this agreement, execute any documents reasonably required by ODLR to establish or confirm its rights in Licensed Mark either as proprietor or licensor thereof.

16.  Except as provided in paragraph 6, Licensee may not assign any of its rights or delegate any of its duties under this agreement without the written consent of ODLR which consent will not be unreasonably withheld or delayed; except that at any time, and at its sole discretion, upon written notice of ODLR, Licensee is authorized to assign this agreement and its right, title and interest hereunder in whole or in part to (a) any corporation of which Milton Stern and his Related Transferees (as defined in paragraph 17(b)), in the aggregate, beneficially own more than 50% of the voting stock, (b) any corporation which is controlled by or under common control with the Licensee, or (c) subject to paragraph 17, any corporation which shall have assumed all of the obligations hereunder of Licensee and shall have acquired by merger, consolidation or purchase all or substantially all of the assets of Licensee.  No assignment of this agreement by Licensee of Licensee's interest hereunder shall relieve Licensee of any of its obligations

-18-

hereunder until termination thereof in accordance with the terms of this agreement, except in the case of an assignment pursuant to clause (c) of this paragraph.

17.  (a)  "Sellout transaction," whenever used in this agreement shall mean any of the following transactions: (i) a sale of all or substantially all of the assets of Licensee; (ii) a merger, consolidation or like transaction of Licensee into or with one or more corporations, as a result of which Milton Stern and his Related Transferees immediately after such transaction beneficially own less than 50% of the voting stock of Licensee or the surviving entity, as the case may be; (iii) a complete liquidation of Licensee unless the business of Licensee is continued by distributees in liquidation and such distributees are controlled by Milton Stern and his Related Transferees; (iv) a plan pursuant to which Milton Stern and his Related Transferees exchange some or all of their stock in Licensee or pursuant to which Licensee issues additional shares and, as a result of such plan, Milton Stern and his Related Transferees immediately after such transaction beneficially own less than 50% of the outstanding voting stock of Licensee or the resultant entity, as the case may be; or (v) Milton Stern and his Related Transferees, sell, transfer, or otherwise dispose of (or cause the sale, transfer or other disposition of) some or all of their stock in Licensee so that immediately after such transfers Milton Stern and his Related Transferees beneficially own less than 50% of the outstanding voting stock of Licensee.

(b)  "Related Transferee", whenever used in this agreement, shall consist of Milton Stern's wife, his adult lineal descendants, the adult spouses of his lineal descendants, any beneficiary under his last Will and Testament and trusts for the benefit of Milton Stern or any of the foregoing or minor lineal descendants of any of the foregoing.

(c)  If at any time during the term of this agreement, a Sellout transaction is effected by Licensee or Milton Stern, then the minimum royalties payable under paragraph 7 in such contract year and thereafter shall be increased in each such contract year by the sum of $50,000.

18.  ODLR and Oscar de la Renta jointly and severally represent as follows:  (a) that Licensed Mark in respect of Licensed Products is available and unanticipated for use and/or registration in the United States, its territories and possessions other than as provided in this agreement, (b) that neither ODLR nor Oscar de la Renta is aware of any prior users and/or applicants or registrants of trademarks or trade names so similar to Licensed Mark as to be likely to interfere with or prevent the use of Licensed Mark by Licensee hereunder, it being understood that neither party has made independent investigation thereof and (c) neither of them have granted nor will grant any rights to any third parties which conflict or may conflict with the rights granted to Licensee hereunder with respect to Licensed Products.  ODLR and Oscar de la Renta hereby indemnify and agree to hold Licensee harmless from and against any losses it may suffer as a result of Licensee being unable to make free use of Licensed Mark for Licensed Products in the United States, its territories, and possessions.

19.  Nothing contained herein shall be construed to place the parties in any relationship other than that of trademark licensor and trademark licensee or to constitute either party the agent, partner, or joint venturer of the other, except to the limited extent hereinabove specifically provided.

20.  This agreement shall continue in force without limit of period, unless Licensee shall terminate the agreement by giving ODLR 180 days written

-20-

notice in advance of December 31, 1981 or any subsequent odd-year anniversary thereof. Upon this agreement being thus terminated, all rights and obligations of Licensee hereunder shall cease and Licensee shall thereupon halt all further use of Licensed Mark or of any mark confusingly similar thereto, except that Licensee shall have a term of 6 months thereafter within which to dispose of any stock of Licensed Products that it may have on hand. ODLR shall be entitled to receive royalties in accordance with paragraph 7 in respect of the net sales of the stock of Licensed Products in the Territory so disposed. It is also agreed that any instrument pursuant to which Licensee appoints or designates a sub-licensee in accordance with paragraph 6, shall contain a provision that any and all rights of said sub-licensee in and to the use of Licensed Mark shall cease and terminate upon and co-extensively with any termination of this agreement as to Licensee, subject, however, to a term of 6 months from termination within which such sub-licensee may dispose of any stock of Licensed Products that it may have on hand and to the requirement to continue previously stipulated royalty payments, if any, to Licensee on the stock of Licensed Products so disposed, in which royalty ODLR shall be entitled to share in accordance with paragraph 7.

21. (a) The following events shall constitute Events of Default:

(i) Licensee fails to pay any payment of royalty when due and such failure shall continue for a period of 30 days after written notice thereof by ODLR to Licensee; or

(ii) Licensee shall violate or fail to perform any of its obligations under this agreement (other than a payment of royalties) and such violation or failure shall continue uncured for a period of 90 days after written notice thereof by ODLR to Licensee.

-21-

(b)   Upon the occurrence of any Event of Default and so long as the same shall be continuing, ODLR may, at its option, terminate this agreement by written notice to such effect given to Licensee. Termination of this agreement under the provisions of this paragraph 21 shall be without prejudice to any other rights which ODLR may have against Licensee.

22.   Any controversy or claim arising out of, in connection with, or relating to, this agreement or the breach or performance thereof, shall be determined by arbitration at the office of the American Arbitration Association in the City of New York in accordance with the rules, then obtaining, of the American Arbitration Association. ODLR and the Licensee shall share equally the full cost of such arbitration (except each shall bear its own attorneys' fees). Any decision rendered by the arbitrators shall be final and binding, and judgment may be entered in any court having jurisdiction. Neither Licensee nor ODLR shall be deemed to be in breach of this agreement unless Licensee or ODLR shall fail to comply with any award or decision by said Arbitrator.

23.   This agreement shall automatically terminate, without further notice, upon the termination of the License Agreement as of August 18, 1977 , by and between Oscar de la Renta, ODLR and Parfums Stern Ltd.

24.   Any written notice under this agreement shall be considered given when delivered personally or sent by telegraph, cable or telex, or mailed by registered mail, return receipt requested, to the parties at the following addresses (or at such address as a party may specify by notice to the other).

To ODLR:

     Oscar de la Renta, Ltd.
     550 Seventh Avenue
     New York, New York 10018

     and

     International Licensing Associates
     101 Park Avenue
     New York, New York 10017
     Attention: Mr. Leo Gore

     and

     Frank A. Wortmann, Esq.
     Wortmann & Henry
     60 East 42nd Street
     New York, New York 10017

To Licensee:

     Parfums Stern Inc.
     40 West 57th Street
     New York, New York 10019

     and

     Davis & Gilbert, Esqs.
     850 Third Avenue
     New York, New York 10022
     Attention: Michael D. Ditzian, Esq.

25.    The failure of a party to insist upon strict adherence to any term of this agreement on any occasion shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this agreement. Any waiver must be in writing and signed by the party or parties waiving.

26.    This agreement shall be binding upon and inure to the benefit of Licensee and ODLR and their respective successors and permitted assigns. This agreement shall also be binding upon and inure to the benefit of Mr. Oscar de la Renta and his heirs. This agreement contains a complete statement of all

-23-

arrangements among the parties with respect to its subject matter, and cannot be changed or terminated orally.

27.   This agreement is made in New York and shall be governed by and construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed this 27ᵗʰ day of November , 1981 as of the day and year first above written.

_____
Oscar de la Renta

OSCAR DE LA RENTA, LTD.

By _____
Gerald Shaw, President

PARFUMS STERN INC.

By _____
Milton Stern, Chairman

-24-

## ASSIGNMENT

WHEREAS, MILTON STERN PARFUMS, INC., a corporation organized under the laws of the State of New York, with its principal place of business at 40 West 57th Street, New York, New York 10019 (hereinafter "Assignor"), is the owner of the marks OSCAR, Registration Number 1,081,451, dated January 10, 1978 and OSCAR DE LA RENTA, Registration Number 1,085,216, dated February 14, 1978, which are registered in the United States Patent and Trademark Office.

WHEREAS, PARFUMS STERN INC., a corporation organized under the laws of the State of New York, with its principal place of business at 40 West 57th Street, New York, New York 10019 (hereinafter "Assignee"), is desirous of acquiring said marks and the said registrations.

THEREFORE, for good and valuable consideration receipt of which is hereby acknowledged, said Assignor does hereby assign unto the said Assignee all rights, title and interest in and to the said marks, together with the goodwill of the business symbolized by the marks, and the registrations thereof, and all rights to damages or profits, due or accrued, arising out of past infringement of the said marks or injury to said goodwill, and the right to sue for and recover the same in the Assignee's own name.

IN WITNESS WHEREOF, this Assignment has been executed this 27ᵗʰ day of November, 1981.

(CORPORATE SEAL)          MILTON STERN PARFUMS, INC.

By _____

Milton Stern, President

Copy - Not To Be Used As An
Original Document

STATE OF NEW YORK )
: SS.:
COUNTY OF NEW YORK )


On this 27Th day of November , 1981, before me personally came
MILTON STERN to me known, who being by me duly sworn, did depose and say that
he is the President of MILTON STERN PARFUMS, INC. the corporation described
in and which executed the foregoing instrument; that he knows the seal of said
corporation; that the seal affixed to said instrument is such corporate seal; that it
was so affixed by order of the Board of Directors of said corporation and that he
signed his name thereto by like order.

_____
Notary Public

MICHAEL STERN
Notary Public, State of New York
No. 31-4526927
Qualified in New York County
Commission Expires March 30, 19 82

## ASSIGNMENT

WHEREAS, PARFUMS STERN INC., a corporation organized under the laws of the State of New York, with its principal place of business at 40 West 57th Street, New York, New York, 10019, has adopted and used the trademarks OSCAR and OSCAR DE LA RENTA, which are registered in the United States Patent and Trademark Office, Registration Numbers 1,081,451 and 1,085,216, dated respectively January 10, 1978, and February 14, 1978; and

WHEREAS, OSCAR DE LA RENTA, LTD., a corporation organized under the laws of the State of New York, with its principal place of business at 550 Seventh Avenue, New York, New York, 10018, is desirous of acquiring said marks and the registration thereof;

THEREFORE, for good and valuable consideration, receipt of which is hereof acknowledged, PARFUMS STERN INC. does hereby assign unto OSCAR DE LA RENTA, LTD., or its assigns, all rights, title and interest in and to the said marks, together with the goodwill of the business symbolized by the marks, and the registrations thereof, Numbers 1,081,451 and 1,085,216.

Date: November 27 , 1981


(CORPORATE SEAL)                    PARFUMS STERN INC.

                                    By: _____
                                        Milton Stern, Chairman


Copy - Not To Be Used As An Original Document

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On this 27Th day of November, 1981, before me personally came

Milton Stern, to me known, who, being by me duly sworn did depose and say that he

is the Chairman of PARFUMS STERN INC., the corporation described in and which

executed the foregoing instrument; that he knows the seal of said corporation, and

that the seal affixed to said instrument is such corporate seal; that it so affixed by

order of the Board of Directors of said corporation; and that he signed his name

thereto by like order.

Notary Public

MICHAEL STERN
Notary Public, State of New York
No. 31-4526927
Qualified in New York County
Commission Expires March 30, 1982

KNOWN ALL MEN BY THESE PRESENTS that we, PARFUMS STERN INC., a New York corporation of 40 West 57th Street, New York, New York ("Stern"), have made, constituted and appointed and by THESE PRESENTS do hereby irrevocably make, constitute and appoint OSCAR DE LA RENTA, LTD., a New York corporation of 550 Seventh Avenue, New York, New York ("Renta"), OSCAR DE LA RENTA residing at 2 East 70th Street, New York, New York, and GERALD SHAW residing at 1218 Smithridge Road, New Caanan, Connecticut, or the survivors or survivor of them, Stern's true and lawful attorney for Stern and in Stern's name, place and stead to assign, convey, transfer and/or set over all right, title and interest which Stern may now possess or subsequently acquire in the United States in and to the trademarks OSCAR and OSCAR DE LA RENTA in reslation to perfumes and goods of the same description thereof, and in particular Registrations Nos. 1081451 and 1085216 covering the said trademarks, together with the goodwill of the business symbolized thereby, hereby giving and granting unto Stern's said attorney full power and authority to do and perform all and every act or thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as Stern might or could do if present.

This power of attorney is irrevocable and shall be binding on Stern and Renta, their successors or assigns.

IN WITNESS WHEREOF, Stern has executed and placed its seal on this power of attorney in New York, New York this 27th day of November, 19 82.

PARFUMS STERN INC.

By _____

Milton Stern, Chairman

Copy - Not To Be Used As An Original Document

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On the 27ᵀᴴ day of November, 1981, before me personally came MILTON STERN, to me known, who, being by me duly sworn, did depose and say that he is the Chairman of PARFUMS STERN INC., the corporation described in, and which executed, the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation; and that he signed his name thereto by like order.

_____
Notary Public

MICHAEL STERN
Notary Public, State of New York
No. 31-4520927
Qualified in New York County
Commission Expires March 30, 19 82

(Separator page)



December 8, 1994

Sanofi Beauté, Inc.
40 West 57th Street
New York, New York 10019
U.S.A.

Parfums Stern S.A.
62, Avenue d'Iéna
75116 Paris
France

Re:  License Agreement dated April 1, 1976 among Oscar de la
Renta ("ODLR"), Oscar de la Renta, Ltd., ("Ltd.") and Milton
Stern Parfums, Inc. and ~~License Agreement~~ dated August 18, 1977
among ODLR, Ltd., and Parfums Stern, Inc., (collectively the
"License Agreements"); Letter Agreement dated November 27, 1981
among ODLR, LTD., Parfums Stern, Inc and Parfums Stern, Ltd. (the
"Letter Agreement") Letter Agreement, dated April 27, 1988,
between ODLR and Parfums Stern Inc. and acknowledged and accepted
by Ltd. (the "Personal Services Agreement"), Letter Agreement
dated January 30, 1990 between ODLR and Sanofi Beauté, Inc.
("SBI") SBI pertaining to additional services ("Additional
Services Agreement"), Letter Agreement dated March 5, 1992, among
ODLR, Ltd., SBI and Parfums Stern Overseas Ltd. (the "Royalty
Agreement"),  Letter Agreement dated as of March 30, 1992,
between ODLR and SBI amending the Personal Services Agreement
(the "Personal Appearances Agreement"), Letter Agreement dated
June 20, 1994, among ODLR, Ltd.., and SBI modifying payment
arrangements reflected in the foregoing agreements ("Modification
Agreement") (the Letter Agreement, the Personal Services
Agreement, the Additional Services Agreement, the Royalty
Agreement, the Personal Appearances Agreement, and the
Modification Agreement shall be known collectively as "the ODLR
Agreements").

---

Gentlemen:

     For good and valuable consideration, the sufficiency of
which is hereby acknowledged, we agree that the License
Agreements and the ODLR Agreements shall be modified as follows:

1.   The ODLR Agreements:

     The ODLR Agreements are hereby terminated effective December
31, 1994, with the exception of any terms of the ODLR Agreements

December 8, 1994
Page 2

intended to survive their termination, including, without
limitation, the releases and indemnification by ODLR and Ltd.
contained in the Personal Services Agreement and the Modification
Agreement, and the following shall be substituted in their place
and Paragraphs 7 and 9 of the License Agreements are hereby
amended accordingly:

    1.1  <u>Personal Services</u>.  ODLR will make himself personally
available for personal appearances and consultation, at
reasonable times, as mutually agreed between SBI and ODLR.  SBI
shall use its best efforts to give ODLR at least two (2) months
prior notice of any intended meeting or personal appearance.  Any
scheduling shall be subject to ODLR's prior business and/or
personal commitments. In connection herewith, SBI shall reimburse

ODLR for his first-class travel, lodging, food and other related
expenses outside of New York City incurred by him to satisfy his
obligations hereunder.

    1.2  <u>Compensation for Personal Services</u>.  As and for
compensation to ODLR for the services to be rendered as set forth
in Paragraph 1, ODLR shall be paid directly a sum equal to ONE
AND ONE-HALF (1.5%) percent (the "Percentage Payment") of Net
Sales (as defined in Paragraph 2.1 below).  SBI shall pay to ODLR
each year ONE MILLION (US$1,000,000) U.S. DOLLARS (the
"Guaranteed Payment") for each year during which ODLR renders
services or makes personal appearances in connection with the
License Agreements as guaranteed, nonrefundable, minimum annual
advances against the Percentage Payment.  The Guaranteed Payment
shall be payable annually in equal quarterly installments of TWO
HUNDRED FIFTY THOUSAND (US$250,000) U.S. DOLLARS each on the
first day of each calendar quarter beginning January 1, 1995. The
Guaranteed Payment will be credited against the Percentage
Payment.  Adjustment payments, if any, and accompanying sales
reports shall be furnished by SBI to ODLR within thirty (30) days
after the first day of each calendar quarter.  This paragraph 2
shall be applicable for every year during which the License
Agreements are in effect so long as ODLR is personally involved
in supporting  the business of and related to the License
Agreements by his efforts.

2.    <u>The License Agreements</u>:

    The License Agreements are hereby supplemented and amended
as follows:

    2.1  <u>Royalty Rate</u>.  Paragraph 7(b) shall be amended so that
the royalties payable to Ltd., shall be equal to 3.5% on all
annual Net Sales. The royalty rate shall increase to 4.0% on all
annual Net Sales at such time as Paragraph 1.2 of the ODLR

December 8, 1994
Page 3

Agreement, above, no longer applies. "Net Sales" shall mean gross sale price to the first unrelated third party less cash and trade discounts, returns, allowances and taxes directly applicable to the sales (such as sales, use, ad valorem or other similar taxes but not taxes based on Licensees' income). There shall also be excluded from Net Sales calculations, shipping costs, insurance costs, tariffs and duties to the extent stated separately on any invoice covering sales of Licensed Products.

2.2 <u>Quarterly Meetings</u>. Quarterly meetings among key people of Ltd., and SBI will be held and attended personally by Mr. J.F. Dehecq and Mr. Oscar de la Renta. Such meetings will be scheduled at such times and places as mutually agreed among the parties.

2.3 <u>New Launches</u>. Sanofi will make regular introductions/launches of new fragrances bearing the Licensed Mark (properly supported), as can be reasonably expected for important brands in the fragrance business.

2.4 <u>Grey Market</u>. The parties recognize and agree that the Licensed Products bearing the Licensed Mark are and are to be marketed and distributed as prestigious and superior quality products. Accordingly, the parties agree that distribution shall be only through specialty stores, department stores, perfumeries and other outlets used for similar prestigious products and, to this end, Sanofi intends and will use its best efforts to police sales of products bearing the Licensed Mark to avoid their diversion to the grey market.

2.5 <u>Separate Identity/Dedicated Brand Manager</u>. Sanofi will maintain the specific identity of the ODLR image and will, accordingly, appoint a worldwide brand manager, acceptable to ODLR. This brand manager will be dedicated solely to the ODLR brand and will have direct contact with ODLR on an on-going basis. In addition, corps of customer service representatives will be created to assist and maximize sell-through and a creative/marketing/product development team will be created when justified by the level of sales achieved.

2.6 <u>Lump Sum</u>. In addition to all other payments provided for herein, a single payment in the amount of $1,040,000 shall be paid to Mr. Oscar de la Renta upon the execution of this Agreement.

2.7 <u>Amendment</u>. This letter agreement is intended to achieve the purposes stated herein and to resolve all disputes among ODLR and Ltd and SBI and its affiliates. Except as specifically amended hereby, the parties hereto, by their signatures below, hereby ratify, confirm, approve and agree to the terms of the License Agreements, which shall continue in full force and effect as amended.

December 8, 1994
Page 4


        Kindly confirm your agreement to the foregoing by
signing below and on the enclosed copy and returning an original
copy of this letter to the undersigned.

                OSCAR DE LA RENTA, LTD.



                By: _____
                    Oscar de la Renta, Chairman



                    _____
                    Oscar de la Renta


CONFIRMED AND AGREED:


SANOFI BEAUTÉ, INC.



By: _____
    B. G. Crouch
    Chairman

PARFUMS STERN, S.A.
(successor-in-interest to Parfums Stern, Ltd.)



By: _____

(Separator page)

## CONSENT AGREEMENT

THIS AGREEMENT, executed as of the date of signing set forth below, is entered into by and between **Oscar de la Renta, Ltd.** ("Applicant"), a New York corporation having its principal place of business at 550 Seventh Avenue, New York, New York 10018, and **YSL Beaute, Inc.,** formerly named Sanofi Beaute Inc. ("Registrant"), a New York corporation having its principal place of business at "Gucci Tower", 685 Fifth Avenue, New Yor, New York 10022.

WHEREAS, Applicant seeks to register the mark OSCAR DE LA RENTA for potpourri and room fragrances; scented candles; and bottled water, and has applied to register its mark on the Principal Register of the United States Patent and Trademark Office, Serial No. 76/300,487; and

WHEREAS, Registrant has used the mark OSCAR DE LA RENTA for the following goods: perfume; namely, eau de parfum, toilet water, cologne, before and after shave lotion and cream, body milk, body cream, bath powder, bath oil, bath soap, bath gel, body deodorant, essential oils for personal use, hand soap, toilet soap, body soap, non-medicated hair care preparations and shampoo; cosmetics; namely, lipstick, eye shadow, eyeliner, mascara, foundation makeup, cheek powder, and blush ("Registrant's Goods") in commerce since at least as early as 1976, and has registered its mark on the Principal Register of the United States Patent and Trademark Office, Registration No. 1,886,850; and

WHEREAS, the United States Patent and Trademark Office has cited Registrant's registration against registration of Applicant's mark on the grounds that the marks are confusingly similar; and

WHEREAS, the parties hereto recognize the validity of each other's use and registration of and their respective marks in connection with their respective goods and services and wish to avoid any conflict with the other's use or registration of its mark; and

WHEREAS, the parties hereto have concluded that confusion is not likely to arise from their use and registration of their respective marks in connection with their respective goods and services as set forth due to differences in the goods, in the potential consumers, in the channels of trade and their long existing business relationship.

NOW, THEREFORE, in consideration of the mutual promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Applicant agrees not to use the mark OSCAR DE LA RENTA in connection with Registrant's goods.

2. Registrant hereby consents to, and agrees that it will not take any action to interfere with or prevent the use or registration of the mark OSCAR DE LA RENTA by

Applicant in connection with Applicant's goods.

3.    The parties agree to execute and file with the United States Patent and Trademark Office any and all documents which may be necessary or proper to effectuate the terms of this Agreement, including the registration of the parties' respective marks.

4.    The parties agree to continue to take reasonable action to prevent any confusion due to the coexistence and registration of their respective marks, and to notify each other of any instances of confusion.

5.    This Agreement contains the entire agreement between the parties and may only be amended or supplemented in a writing signed by both parties.

IN WITNESS WHEREOF, the parties hereto enter into this Agreement on the last date set forth below.


OSCAR DE LA RENTA, LTD.                         YSL BEAUTE, Inc.

By_____                      By_____
Name: _R. Barnett_                               Name: _ALAIN G DENOLY_
Title: _COO_                                     Title: _Pdt & CEO_
Dated: _5/13/03_                                 Dated: _05/20/03_

Exhibit B

**Thank you for your request. Here are the latest results from the** <u>TARR web server.</u>

**This page was generated by the TARR system on** 2008-06-20 16:48:30 ET

**Serial Number:** 73095499 <u>Assignment Information</u>      <u>Trademark Document Retrieval</u>

**Registration Number:** 1081451

**Mark (words only):** OSCAR

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2008-01-17

**Filing Date:** 1976-08-03

**Transformed into a National Application:** No

**Registration Date:** 1978-01-10

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at** <u>TrademarkAssistanceCenter@uspto.gov</u>

**Current Location:** 830 -Post Registration

**Date In Location:** 2008-01-17

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

1. YSL BEAUTE INC.

**Address:**
YSL BEAUTE INC.
460 PARK AVENUE
NEW YORK, NY 10022
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** New York

---

### GOODS AND/OR SERVICES

**International Class:** 003
**Class Status:** Active
PERFUME

**Basis:** 1(a)
**First Use Date:** 1976-05-25
**First Use in Commerce Date:** 1976-05-25

## ADDITIONAL INFORMATION

**Name Portrait Consent:**
THE NAME "OSCAR DE LA RENTA" IS THAT OF A LIVING INDIVIDUAL, WHOSE CONSENT IS OF RECORD.

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-01-17 - Second renewal 10 year

2008-01-17 - Section 8 (10-year) accepted/ Section 9 granted

2008-01-16 - Assignment Of Ownership Not Updated Automatically

2008-01-09 - Assigned To Paralegal

2008-01-07 - TEAS Section 8 & 9 Received

2007-11-15 - Case File In TICRS

2006-11-29 - Assignment Of Ownership Not Updated Automatically

2006-08-31 - TEAS Change Of Correspondence Received

1998-03-19 - First renewal 10 year

1998-01-08 - Section 9 filed/check record for Section 8

1997-03-12 - Section 15 acknowledged

1996-12-09 - Section 15 affidavit received

1996-12-09 - Post Registration action correction

1984-03-26 - Section 8 (6-year) accepted

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Mark I. Peroff

**Correspondent**
MARK I. PEROFF
KIRKPATRICK & LOCKHART PRESTON GATES ELL
599 LEXINGTON AVENUE
NEW YORK, NY 10022
Phone Number: 212 536 3900
Fax Number: 212 536 3901

Exhibit C

http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=73095500

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2008-06-20 17:59:05 ET

**Serial Number:** 73095500 Assignment Information   Trademark Document Retrieval

**Registration Number:** 1085216

**Mark (words only):** OSCAR DE LA RENTA

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 1998-04-23

**Filing Date:** 1976-08-03

**Transformed into a National Application:** No

**Registration Date:** 1978-02-14

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at** TrademarkAssistanceCenter@uspto.gov

**Current Location:** 830 -Post Registration

**Date In Location:** 2008-02-13

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

1. SANOFI BEAUTE INC.

**Address:**
SANOFI BEAUTE INC.
90 PARK AVENUE
NEW YORK, NY 10016
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** New York

---

### GOODS AND/OR SERVICES

**International Class:** 003
**Class Status:** Active
PERFUME

**Basis:** 1(a)
**First Use Date:** 1976-05-25
**First Use in Commerce Date:** 1976-05-25

## ADDITIONAL INFORMATION

**Prior Registration Number(s):**
922367
1057696
1059369

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-02-13 - Assignment Of Ownership Not Updated Automatically

2008-02-13 - Assigned To Paralegal

2008-02-11 - TEAS Section 8 & 9 Received

2007-12-03 - Case File In TICRS

2007-02-06 - TEAS Change Of Correspondence Received

2006-11-29 - Assignment Of Ownership Not Updated Automatically

1998-04-23 - First renewal 10 year

1998-01-08 - Section 9 filed/check record for Section 8

1997-03-08 - Section 15 acknowledged

1996-12-09 - Section 9 filed/check record for Section 8

1984-04-10 - Section 8 (6-year) accepted

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
MARK I. PEROFF

**Correspondent**
MARK I. PEROFF
Kirkpatrick & Lockhart Preston Gates Ell
599 Lexington Avenue

6/20/2008 5:59 PM

New York NY 10022-6030
Phone Number: 212-536-3900
Fax Number: 212-536-3901

Exhibit D



PARFUM

CAUTION FLAMMABLE
DO NOT USE NEAR HEAT OR FLAME



OR

OSDMMINIMW

6 81131 47160 2

Exhibit E



INGREDIENTS:
ALCOHOL DENAT.
PARFUM (FRAGRANCE).
AQUA (WATER).

INFLAMMABLE - FLAMMABLE

Oscar de la Renta
PARFUMS

PARFUMS STERN
20.26 BOULEVARD DU PARC
92521 NEUILLY CEDEX

Echantillon - Vente interdite
Sample - Not for sale

INGREDIENTS : ALCOHOL DENAT . AQUA (WATER). PARFUM (FRAGRANCE). ALPHA-METHYL IONONE LINALOOL. LIMONENE GERANIOL. COUMARIN. EUGENOL. HYDROXYCITRONELLAL. CITRONELLOL. BENZYL SALICYLATE. CINNAMYL ALCOHOL. BENZYL BENZOATE. ISOEUGENOL. FARNESOL. CITRAL. BENZYL CINNAMATE. AMYL CINNAMAL. BENZYL ALCOHOL. EVERNIA FURFURACEA EXTRACT . HEXYL CINNAMAL. *00A08-I*

www.oscardelarenta-fragrances.com

Exhibit F





Designer Fragrance
Collectible

(CARTON IS EMPTY)



PARFUM

CAUTION: FLAMMABLE.
DO NOT USE NEAR HEAT OR FLAME.

INGREDIENTS: ALCOHOL, PARFUM (FRAGRANCE), ALPHA-METHYL IONONE, AMYL CINNAMAL, BENZYL ALCOHOL,
BENZYL BENZOATE, BENZYL CINNAMATE, BENZYL SALICYLATE, CINNAMYL ALCOHOL, CITRAL, CITRONELLOL,
COUMARIN, EUGENOL, EVERNIA PRUNASTRI EXTRACT, FARNESOL, GERANIOL, HYDROXYCITRONELLAL,
ISOEUGENOL, LIMONENE, LINALOOL, AQUA (WATER). *00A10-2*

THIS GENUINE OSCAR PRODUCT HAS BEEN REPACKAGED IN THE U.S. BY EA FRAGRANCES, CO.,
NEW YORK, NY 10003, A COMPANY NOT AFFILIATED WITH OSCAR DE LA RENTA, LTD.
OSCAR DE LA RENTA, LTD. IS THE OWNER OF THE OSCAR AND OSCAR DE LA RENTA REGISTERED TRADEMARKS.
MADE IN FRANCE

OSDMM1N1MW    BF02



INGREDIENTS:
ALCOHOL DENAT..
PARFUM (FRAGRANCE).
AQUA (WATER).
INFLAMMABLE · FLAMMABLE

*Oscar de la Renta*
PARFUMS

PARFUMS STERN
20,26 BOULEVARD DU PARC
92521 NEUILLY CEDEX