UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSCAR DE LA RENTA, LTD.,

                              Plaintiff,

            -against-

ELIZABETH ARDEN, INC., d/b/a "EA FRAGRANCES
CO.,"

                              Defendant.

08 CIV 5785 (DLC)

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR-DEFENDANT YSL BEAUTÉ'S MOTION TO INTERVENE AND MOTION TO STAY LITIGATION PENDING ARBITRATION

ARNOLD & PORTER LLP
Louis S. Ederer
Stewart D. Aaron
399 Park Avenue
New York, NY  10022
Telephone: (212) 715-1068
Facsimile: (212) 715-1399
louis.ederer@aporter.com
stewart.aaron@aporter.com

*Attorneys for Intervenor-Defendant-
Counterclaim-Plaintiff YSL Beauté, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT FACTS ............................................................................................................ 3

I.    The License Agreement ............................................................................................. 3

II.   ODLR's Campaign to Terminate the License Agreement and the Pending
      Arbitration ................................................................................................................. 4

ARGUMENT ..................................................................................................................... 10

I.    The Motion to Intervene Should Be Granted Because YSL Beauté Satisfies the
      Requirements of Fed. R. Civ. P. 24(a)(2) .............................................................. 10

            A.    The Motion to Intervene is Timely ............................................................ 11

            B.    YSL Beauté Claims an Interest Relating to the Property or
                  Transaction Which is the Subject Matter of the Litigation ...................... 11

            C.    Protection of YSL Beauté's Interests Will Be Impaired By the
                  Disposition of the Litigation ...................................................................... 13

            D.    YSL Beauté's Interests Are Not Protected By the Current Parties ........... 14

II.   The Motion to Intervene Also Should Be Granted Because YSL Beauté Satisfies
      the Requirements of Rule 24(b) .............................................................................. 15

III.  This Action Should Be Stayed in Favor of the Pending AAA Arbitration ............ 18

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

ACE Capital RE Overseas Ltd. v. Central United Life Insurance Co.,
   307 F.3d 24 (2d Cir. 2002)..................................................................................19

Arciniaga v. General Motors Corp.,
   460 F.3d 231 (2d Cir.),
   *cert. denied*, 127 S. Ct. 838 (2006) ...................................................................18

Arista Records, Inc. v. Dalaba Color Copy Ctr., Inc.,
   No. 05-CV-3634 DLI MDG,
   2007 WL 749737 (E.D.N.Y. Mar. 7, 2007) .......................................................12, 13

Belke v. Merrill Lynch, Pierce, Fenner & Smith,
   693 F.2d 1023 (11th Cir. 1982) ...........................................................................17

Birmingham Associates Ltd. v. Abbott Laboratories,
   547 F. Supp. 2d 295 (S.D.N.Y. 2008)..............................................................19, 20

Brennan v. N.Y.C. Board of Education,
   260 F.3d 123 (2d Cir. 2001)..................................................................11, 12, 14, 15

CBS Inc. v. Snyder,
   136 F.R.D. 364 (S.D.N.Y. 1991) .........................................................................14

Collins & Aikman Products Co. v. Building Systems, Inc.
   58 F.3d 16 (2d Cir. 1995)......................................................................................20

Conservation Law Foundation v. Mosbacher,
   966 F.2d 39 (1st Cir. 1992)...................................................................................12

Denney v. BDO Seidman, L.L.P.
   412 F.3d 58 (2d Cir. 2005)....................................................................................21

International Design Concepts, LLC v. Saks Inc.
   486 F. Supp. 2d 229 (S.D.N.Y. 2007).............................................................12, 16

JLM Industries v. Stolt-Nielsen SA
   387 F.3d 163 (2d Cir. 2004).............................................................................21, 22

Moses H. Cone Mem. Hospital v. Mercury Construction Corp.,
   460 U.S. 1 (1983)..................................................................................................19

NAACP v. New York,
    413 U.S. 345 (1973)........................................................................................11

National Broadcasting Co. v. Bear Stearns & Co.,
    165 F.3d 184 (2d Cir. 1999)..........................................................................18

New York Public Interest Research Group, Inc. v. Regents of University of State
    of N.Y.,
    516 F.2d 350 (2d Cir. 1975)..........................................................................12

New York v. Abraham,
    204 F.R.D. 62 (S.D.N.Y. 2001) ..............................................................15, 16

Olympus Corp. v. United States,
    627 F. Supp. 911 (E.D.N.Y. 1985),
    aff'd, 792 F.2d 315 (2d Cir. 1986),
    cert. denied, 486 U.S. 1042 (1988)...............................................................12

Oneida Indian Nation of Wisconsin v. New York,
    732 F.2d 261 (2d Cir. 1984)..........................................................11, 12, 13, 15

Paramedics Electromedicina Comercial, Ltda. v. GE Medical System
    Information Techs., Inc.,
    369 F.3d 645 (2d Cir. 2004)..........................................................................20

Petrik v. Reliant Pharm., Inc.,
    No. 8:07-CV-1462-T-24 TBM,
    2007 WL 3283170(M.D. Fla. Nov. 5, 2007) ..................................17, 18, 21

Trbovich v. United Mine Workers of America,
    404 U.S. 528 (1972).......................................................................................14

United States ex rel. Frank M. Sheesly Co. v. St. Paul Fire & Marine
    Insurance Co.,
    239 F.R.D. 404 (W.D. Pa. 2006) ..................................................................16

United States ex rel. MPA Construction, Inc. v. XL Specialty Insurance Co.,
    349 F. Supp. 2d 934 (D. Md. 2004).........................................................16, 17

Vera v. Saks & Co.,
    335 F.3d 109 (2d Cir. 2003)..........................................................................20

Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,
    782 F. Supp. 870 (S.D.N.Y. 1991) ...............................................................11

**STATUTES**

9 U.S.C. § 3 ........................................................................................................... 1, 3,4, 21

Fed. R. Civ. P. 24 .......................................................................................... *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OSCAR DE LA RENTA, LTD.,

                              Plaintiff,

              -against-

ELIZABETH ARDEN, INC., d/b/a "EA FRAGRANCES
CO.,"

                              Defendant.

---

08 CIV 5785 (DLC)

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR-DEFENDANT YSL BEAUTÉ'S MOTION TO INTERVENE AND MOTION TO STAY LITIGATION PENDING ARBITRATION

Intervenor-Defendant YSL Beauté, Inc. ("YSL Beauté") hereby submits its memorandum of law in support of its motion to intervene in this action that Oscar De La Renta, Ltd. ("ODLR") brought against Elizabeth Arden, Inc. d/b/a/ "EA Fragrances Co." ("EA"), and to stay this action in favor of the arbitration now pending between YSL Beauté and ODLR before the American Arbitration Association ("AAA"). For the reasons set forth below, YSL Beauté submits that, pursuant to Fed. R. Civ. P. 24, it should be permitted to intervene as a defendant in the above-captioned action and, pursuant to 9 U.S.C. § 3, the action should be stayed in favor of the pending arbitration between YSL Beauté and ODLR.

## PRELIMINARY STATEMENT

This lawsuit is part of a campaign by ODLR to get out from under a trademark license agreement with YSL Beauté that has been in effect for more than thirty years. ODLR is attempting to exert pressure on YSL Beauté to give up its rights under the license agreement by

suing YSL Beauté's customer, EA. This lawsuit simply never should have been brought, and ODLR's tactics should not be countenanced.

The issues raised by ODLR in this lawsuit already are the subject of an arbitration pending in the AAA between YSL Beauté and ODLR. That arbitration, commenced seventeen days prior to the commencement of this lawsuit, was initiated by YSL Beauté pursuant to the arbitration provisions contained in Section 22 of the License Agreement between YSL Beauté and ODLR (attached as Exhibit A to ODLR's Complaint in this action). In the AAA arbitration, YSL Beauté seeks, *inter alia*, a declaration that it is not in breach of the License Agreement, in connection with ODLR's three notices of breach sent to YSL Beauté commencing in January 2008. One of the breach notices concerns the very allegations raised by ODLR in this lawsuit, regarding EA's sale of certain ODLR fragrance products bought from YSL Beauté (the "ODLR Fragrance Products").

Ignoring its contractual undertaking in the License Agreement to arbitrate all disputes with YSL Beauté, and subsequent, separate written undertaking that ODLR "will look solely to YSL Beauté for any and all remedies to which ODLR may be entitled as a result of any unlawful actions of EA," ODLR initiated this lawsuit, alleging that EA's sale of the ODLR Fragrance Products was unauthorized, and that EA's repackaging of such products constitutes trademark or trade dress infringement, the same claims that are the subject of the AAA arbitration. If the ODLR Fragrance Products were not authorized for sale by ODLR, then it is YSL Beauté, ODLR's licensee, that should not be selling them. And, if EA's repackaging of the products constitutes trademark and trade dress infringement, then the AAA would decide whether ODLR should do what it promised it would do, and look only to YSL Beauté, the owner of the trademarks for these goods, for relief. ODLR's maneuver in commencing this lawsuit should be

called out for what it is -- an attempt to circumvent a contractual agreement to arbitrate disputes

arising out of the License Agreement, and to put pressure on YSL Beauté as part of its scheme to

ultimately terminate its 30 year relationship with YSL Beauté.

## RELEVANT FACTS

The facts are fully set forth in the accompanying Declaration of Louis E. Ederer, counsel

for YSL Beauté ("Ederer Decl."), and the exhibits thereto, and will be summarized herein.

## I.    The License Agreement

YSL Beauté and ODLR are parties to a License Agreement, dated as of August 18, 1977,

that was subsequently amended, most recently in December 1994 (the "License Agreement").

Ederer Decl., Ex. 5, ¶ 4 and Ex. 6.  Under the License Agreement, ODLR granted YSL Beauté

the exclusive license in the U.S., Canada and France to use the OSCAR DE LA RENTA

trademarks (the "ODLR Marks") in the manufacture, promotion and sale of fragrances and other

ancillary products.  A parallel license agreement executed at the same time grants YSL Beauté

the same rights in the rest of the world, effectively giving YSL Beauté a worldwide license.

Pursuant to the terms of the License Agreement, YSL Beauté is also the registered owner

of all right, title and interest in and to the ODLR Marks in the United States.  Ederer Decl., Ex. 5,

¶ 4 and Ex. 6.  Further, under Section 3 of the License Agreement, YSL Beauté has the right to

advise ODLR to bring suit or take action with respect to acts of trademark infringement relating

to the ODLR Marks by others.  Ederer Decl., Ex. 6, ¶ 3.  Such lawsuit under Section 3 would be

brought in the name of YSL Beauté.  *Id.*  The License Agreement nowhere provides that ODLR

may commence an infringement lawsuit in its own name, at its own instance, bypassing YSL

Beauté.

In addition, under Section 22 of the License Agreement, the parties bargained for and

agreed upon a dispute resolution mechanism providing that disputes among the parties were to be

submitted for binding arbitration to the AAA in New York, New York.  Section 22 states in

pertinent part:

> Any controversy or claim arising out of, in connection with, or relating to, this agreement
> or the breach or performance of thereof, shall be determined by arbitration at the office of
> the American Arbitration Association in the City of New York in accordance with the
> rules, then obtaining, of the American Arbitration Association.  ODLR and [YSL Beauté]
> shall share equally the full cost of such arbitration (except each shall bear its own
> attorneys' fees).  Any decision rendered by the arbitrators shall be final and binding, and
> judgment may be entered in any court having jurisdiction.

*Id.*

## II.  ODLR's Campaign to Terminate the License Agreement and the Pending Arbitration

In late 2007, ODLR embarked on a campaign designed, ultimately, to lead to the

termination of the License Agreement.  At that time, ODLR began to assert a number of formal

written complaints about YSL Beauté's performance under the License Agreement.  Following a

series of letters exchanged between the parties commencing in late November 2007, ODLR

provided three separate notices of breach of the License Agreement to YSL Beauté, on January

18, 2008, January 31, 2008 and March 13, 2008 respectively.  YSL Beauté timely responded

(*i.e.*, within the 90 day cure period) to each of these breach notices.  For a detailed description of

these disputes, including the notices of default and corresponding responses, the Court is

respectfully referred to the Statement of Claim that YSL Beauté filed with the AAA on July 1,

2008 ("Statement of Claim"), which is attached as Exhibit 2 to the Ederer Declaration.[1]

As part of its headlong campaign, on January 18, 2008, without prior notice to YSL

Beauté, ODLR sent YSL Beauté's longtime customer EA (and which ODLR knew to be YSL

Beauté's longtime customer), a letter alleging that EA was selling unauthorized ODLR fragrance

---

[1] The AAA arbitration previously had been commenced by the filing by YSL Beauté of a
Demand for Arbitration on June 10, 2008.  Ex. 1 to Ederer Decl.

products, and that EA was engaging in acts of trademark infringement, arising out of EA's repackaging of those products. In that letter, ODLR complained about the following practices: (1) the sale of an unauthorized ODLR fragrance product in a 4 ml package;[2] (2) the use of an outdated ODLR script trademark on the repackaging materials prepared by EA; and (3) the use of the following purported "source identifier" (which is nothing more than a standard copyright notice) on the packaging: "© EA Fragrances Co., Dist. New York, NY 10003." Ederer Decl. ¶ 10 & Ex. 10. The products ODLR complained of in its January 18, 2008 letter to EA are the very same products that ODLR now complains about in its Complaint in this action. *See* Ederer Decl. Ex. 3, ¶¶ 15-19.

EA responded to ODLR's January 18, 2008 letter by letter on January 28, 2008, denying that any infringement had taken place, and reminding ODLR that EA has been a longstanding customer of YSL Beauté, the authorized manufacturer and seller of those goods. Thereafter, on January 30, 2008, YSL Beauté sent a follow up letter to ODLR, expressing its disappointment and concern that ODLR chose to contact EA directly, given that ODLR knew and had known for years that EA was a customer of YSL Beauté for licensed ODLR Fragrance Products. In that letter, YSL Beauté also called ODLR out for threatening EA with a lawsuit, demanding that in the future, any correspondence concerning alleged unauthorized activities of EA be directed to YSL Beauté, and further stating that the issues ODLR was complaining of were issues to be taken up between ODLR and YSL Beauté.[3]

---

[2] EA's response to ODLR on January 28, 2008 confirms that the ODLR fragrance products complained about is the 4 ml bottle described in paragraph 15 of the Complaint. Ex. 10 to Ederer Decl. ("The product you are referring to in your letter is, in fact, a genuine Oscar de la Renta parfum albeit in a very small size … sold to us by YSL Beauté.").

[3] Copies of this correspondence regarding EA are annexed as Exhibit 10 to the Ederer Declaration.

In response to YSL Beauté's January 30, 2008 letter, on January 31, 2008 counsel for

ODLR provided written notice to YSL Beauté of YSL Beauté's alleged breach of the License

Agreement as the result of the sale of these products to (and by) EA.  Ederer Decl., Ex. 9.

Among other things, ODLR complained about the packaging EA was using for such products,

and took the position that the ODLR brand fragrance products YSL Beauté was selling to EA

had not been authorized by ODLR, the very same allegations that now appear in paragraphs 15

and 16 of the Complaint.  ODLR asked YSL Beauté to discontinue all manufacture, advertising

and sale of the ODLR Fragrance Products, to EA and other customers, and to cause EA and its

customers to stop selling such products.  That request and YSL Beauté's response are addressed

in paragraphs 20 and 21 of the Complaint.

On February 5, 2008, YSL Beauté responded to ODLR's January 31, 2008 letter.  Ederer

Decl., Ex. 10.  In that letter, YSL Beauté once again demanded that "if [ODLR] ha[s] any further

issues concerning the activities of EA or any of its customers with respect to [ODLR] products,

that you contact us directly, as these are matters to be taken up directly between YSL Beauté and

ODLR."  Id.  Subsequently, by letter dated February 8, 2008, ODLR acceded to YSL Beauté's

demands, agreeing that "ODLR will look solely to YSL Beauté for any and all remedies to which

ODLR may be entitled as a result of any unlawful actions of EA and will not communicate

further with EA regarding this matter."  Ederer Decl., Ex. 10.

On April 25, 2008, YSL Beauté responded to ODLR's January 31, 2008 notice of breach

concerning the products sold by YSL Beauté to EA.  Ederer Decl., Ex. 10.  In that letter, YSL

Beauté denied any breach of the License Agreement arising out of YSL Beauté's relationship

with EA and its sale of licensed fragrance products to EA.  Nevertheless, in an attempt to

alleviate ODLR's concerns about the packaging being used by EA, which contained an outdated

version of one of the ODLR Marks, YSL Beauté indicated that it had taken steps to cure, by, among other things, causing EA to cease using the mark of which ODLR complained, and causing EA to agree not to ship any more of its inventory in the complained-of packaging. *Id.*

On June 10, 2008, YSL Beauté served and filed its Demand for Arbitration against ODLR before the AAA, pursuant to Section 22 of the License Agreement, requesting a declaration that YSL Beauté was not in breach of the License Agreement. Ederer Dec., Ex. 1. A formal Statement of Claim subsequently was served upon ODLR and filed with the AAA on July 1, 2008. Ederer Decl., Ex. 2. ODLR's January 31, 2008 breach notice relating to the goods sold to EA is specifically referred to in YSL Beauté's Statement of Claim. Accordingly, the causes of action asserted by ODLR against EA in this action are subsumed within the arbitration proceeding currently pending before the AAA.

In addition, also on June 10, 2008, YSL Beauté wrote to ODLR concerning ODLR's notices of breach, including the breach notice with respect to its sale of goods to EA, and indicated that YSL Beauté was prepared to move in the Supreme Court, New York County, to preserve the *status quo* while the disputes under the License Agreement were heard before the AAA. Also on that date, YSL Beauté sent courtesy copies of a Petition and Memorandum of Law in Support of a Motion for a Stay and Preliminary Injunction, and advised ODLR that, if ODLR did not agree to address ODLR's breach notices in arbitration, and refrain from any attempted termination, YSL Beauté would file the Petition and seek a stay of any termination pending arbitration in court. A copy of the Petition is attached to the Ederer Decl. as Exhibit 5.

By letter dated June 11, 2008, ODLR notified YSL Beauté that it would defer termination of the License Agreement pending resolution of the Arbitration, and the court papers were not filed. Ederer Decl., Ex.11. Notably, ODLR also represented that it "prefers, for its own

7

reasons, to secure a prompt and definitive resolution of the parties' respective rights and
obligations … [and t]herefore, ODLR agrees to [YSL Beauté's] request that ODLR defer
termination of the License pending resolution of the arbitration." *Id.*  In addition, for the first
time, ODLR complained to YSL Beauté about an alleged modified packaging being used by EA
for the fragrance product in question, asserting that "ODLR does not consider this modification
to cure YSL Beauté's breach of the License or to redress EA's violation of ODLR's trademark
rights." By doing so, ODLR had now subsumed all issues relating to EA's modified packaging in
the pending arbitration.  ODLR also repeated the same allegation it had made before, namely that
the fragrance product sold by YSL Beauté to EA was not authorized by ODLR.  *Id.*

YSL Beauté responded to ODLR's June 11, 2008 letter on June 13, 2008.  Ederer Decl.,
Ex 11.  In that letter, YSL Beauté reminded ODLR of ODLR's position that it would "look
solely to YSL Beauté for any and all remedies to which ODLR may be entitled as a result of any
unlawful actions of EA and will not communicate further with EA regarding this matter." *Id.*
Also in its June 13, 2008 letter, YSL Beauté brought to ODLR's attention Section 3(a) of the
License Agreement, which provides that YSL Beauté may request that ODLR bring suit or take
action with respect to the licensed trademarks "in the name of [YSL Beauté] as [YSL Beauté]
shall direct," and asked ODLR to provide YSL Beauté with a sample of the complained-of
(modified) packaging, along with an explanation as to why ODLR believed such packaging rose
to the level of trademark infringement, so that YSL Beauté could exercise its contractual right to
determine whether or not a trademark infringement action was necessary.  *Id.*

Instead of providing YSL Beauté with any sample of the allegedly infringing packaging,
however, by letter dated June 27, 2008, ODLR sent YSL Beauté a copy of the Complaint *already
filed* with this Court. Ederer Decl., Exs. 11 & 3.  In its Complaint, ODLR makes the very same

allegations it made against EA beginning in January 2008. Specifically, paragraphs 15 and 16 of the Complaint complain of the very same things that ODLR complained about in its January 2008 letters: (1) the sale of an unauthorized ODLR fragrance product in a 4 ml package; (2) the use of an outdated ODLR trademark on the repackaging materials used by EA; and (3) the use of an improper "source identifier" (which, again, is nothing more than a standard copyright notice) on the packaging, namely the very same copyright notice complained of in January: "© EA Fragrances Co., Dist. New York, NY 10003." In addition, in paragraph 23 of the Complaint, ODLR complains about EA's modified packaging, the same modified packaging it complained about in its June 11, 2008 letter to YSL Beauté, and which it contended, in the letter, fails to constitute a sufficient cure of YSL Beauté's alleged breach. Ederer Decl. Ex. 3. Thus, in its Complaint, ODLR is repeating the very same claims, arising out of the very same packaging, that are the subject of the pending arbitration, and as to which it agreed to look only to YSL Beauté for legal remedy.

Subsequently, on July 7, 2008, ODLR filed its Answering Statement and Counterclaim ("Counterclaim") against YSL Beauté in the AAA action. Ederer Decl., Ex. 12. In its Counterclaim, ODLR alleges, among other things, that YSL Beauté breached its obligations under the License Agreement including the "obligation to obtain approval for any and all licensed products that are marketed and any material changes to the packaging and trade dress of licensed products," a reference to the product sold to EA and the complained of EA packaging, once again implicating the very same issues in the instant action. In addition, for the first time, ODLR claimed that YSL Beauté had breached the License Agreement by violating its "obligation not to attack [ODLR's] title in and to the licensed trademarks," an apparent reference

to YSL Beauté's position that it, and only it, as owner of the ODLR Marks, had the right to decide whether to pursue claims of infringement against EA. Ederer Decl., Ex. 12.

It is clear from the above chronology of events that the issues to be determined in the AAA arbitration are the very same issues that this Court would need to resolve in this action. Among such issues are (1) whether YSL Beauté (and consequently EA) is selling products not authorized by ODLR; (2) whether YSL Beauté has adequately cured its alleged breach of the License Agreement, in view of EA's modification of the original complained-of packaging; (3) whether, by suing EA for trademark and trade dress infringement, ODLR has breached Section 3 of the License Agreement, providing that YSL Beauté has the right to bring trademark infringement claims and the right to demand that ODLR bring trademark infringement claims in YSL Beauté's name; and (4) whether ODLR has violated its undertaking, in its February 8, 2008 letter, that "ODLR will look solely to YSL Beauté for any and all remedies to which ODLR may be entitled as a result of any unlawful actions of EA and will not communicate further with EA regarding this matter." In addition, the "infringement" ODLR now complains of is the very same infringement ODLR complained of back in January 2008, and the present allegations concerning the sale of the alleged "unauthorized" ODLR Fragrance Product (which involve an issue between YSL Beauté and ODLR to be determined in arbitration) are also the very same allegations made in January 2008.

## ARGUMENT

### I.    The Motion to Intervene Should Be Granted Because YSL Beauté Satisfies the Requirements of Fed. R. Civ. P. 24(a)(2)

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, which concerns intervention as of right, a court should grant a motion to intervene if it finds that: (1) the motion is timely, (2) the intervenor claims an interest relating to the property or transaction which is the subject matter

of the action, (3) if intervention is not allowed, the protection of intervenor's interest may be impaired by the disposition of the litigation, and (4) the intervenor's interest is not adequately protected by an existing party. *Brennan v. N.Y.C. Board of Educ.* 260 F.3d 123, 128-29 (2d Cir. 2001); *Oneida Indian Nation of Wisconsin v. New York*, 732 F.2d 261, 265 (2d Cir. 1984) (citations omitted). YSL Beauté satisfies all four requirements under Rule 24(a)(2).[4]

### A.    The Motion to Intervene is Timely

Whether a motion to intervene is timely is determined from the totality of the circumstances. *See, e.g.*, *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991) (citing *NAACP v. New York*, 413 U.S. 345, 365-66 (1973)). Among the factors a court may consider is the time at which the proposed intervenor knew or reasonably should have known of his interest in the case. *Werbungs*, 782 F. Supp. at 874 (motion to intervene timely where, although filed almost two years after intervenor was aware of its interest in the case, intervenor had no direct interest until recently). Here, there is no question that YSL Beauté timely filed its motion to intervene. ODLR filed its Complaint on Friday, June 27, 2008. EA has not yet responded to the Complaint. ODLR has not made a motion for a preliminary injunction. YSL Beauté has acted in a timely manner.

### B.    YSL Beauté Claims an Interest Relating to the Property or Transaction Which is the Subject Matter of the Litigation

A would-be intervenor must demonstrate that there is a tangible threat to a legally cognizable interest. *Brennan*, 260 F.3d at 129. Further, for an interest to be considered cognizable, it must be "direct, substantial, and legally protectable." *Id*. Courts in the Second Circuit have adopted a "liberal approach" to the interest prong of a Rule 24(a)(2) inquiry. *See,*

---

[4] Pursuant to Rule 24(c), annexed as Exhibit 4 to the Ederer Declaration is YSL Beauté's Proposed Answer and Counterclaim in Intervention.

*e.g.*, *New York Pub. Interest Research Group, Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d

350, 351-52 (2d Cir. 1975); *Conservation Law Foundation v. Mosbacher*, 966 F.2d 39, 41-42

(1st Cir. 1992) ("In general, the Courts of Appeals for the Second, Sixth, Tenth and D.C. Circuits

have adopted a liberal approach to intervention. They view the interest test as a practical guide

to disposing of lawsuits by involving as many apparently concerned persons as is compatible

with efficiency and due process.") (citations omitted).

Courts in this Circuit have found cognizable rights in a variety of situations. *See, e.g.*,

*Brennan*, 260 F.3d at 129 (interest in job seniority deemed "direct, substantial and legally

protectable"); *Oneida*, 732 F.2d at 265 (right to sue to recover land, in addition to interest in land

itself, cognizable under Rule 24(a)); *Arista Records, Inc. v. Dalaba Color Copy Ctr., Inc.*, No.

05-CV-3634, DLI MDG, 2007 WL 749737 (E.D.N.Y. Mar. 7, 2007) (interest in office and

copying supplies cognizable under Rule 24(a)). In particular, courts have found rights relating to

trademarks a proper interest for intervenors. *See, e.g.*, *Olympus Corp. v. United States*, 627 F.

Supp. 911, 914-15 (E.D.N.Y. 1985) (customer of trademark owner had legally cognizable

interest in customs dispute regarding trademarked goods), *aff'd*, 792 F.2d 315 (2d Cir. 1986),

*cert. denied*, 486 U.S. 1042 (1988); *International Design Concepts, LLC v. Saks Inc.*, 486 F.

Supp. 2d 229, 235 (S.D.N.Y. 2007) (licensor's interest in trademark legally cognizable under

Rule 24(b)).

Here, YSL Beauté has a legally cognizable interest, *i.e.*, its ownership of the ODLR

Marks, as well as its rights as a licensee under the License Agreement, to which the current

litigation poses a tangible threat, and which rights are already being litigated in the pending AAA

arbitration between YSL Beauté and ODLR. First, as trademark owner, it is YSL Beauté's

marks that are at stake in this action, not ODLR's. Second, as record owner of the ODLR Marks,

12

pursuant to Section 3 of the License Agreement, YSL Beauté has the right to decide whether a third party has infringed on the trademarks and whether legal action should be taken. Third, it is YSL Beauté, not EA, whose rights as licensee are at risk if, as alleged, the products being sold by EA (which it purchased from YSL Beauté) were not authorized by ODLR. These rights are direct, substantial and legally protectable, and at issue in this litigation. Accordingly, YSL Beauté has met the second requirement for intervention as of right under Rule 24(a)(2).

C.     **Protection of YSL Beauté's Interests Will Be Impaired By the Disposition of the Litigation**

The third prong of Rule 24(a)(2) intervention is that the intervenor's interests may be impaired by the disposition of the action. *Oneida*, 732 F.2d at 265. Courts in this Circuit have held that, where the proposed intervenors and an existing party have conflicting claims to the same property, the intervenor's interest would be impaired by the disposition. *See, e.g., id.*; *see also Arista*, 2007 WL 749737, at *6 (intervention proper where parties had conflicting interest to same office goods).

In *Oneida*, the Second Circuit held that a group of Native American nations had the right to intervene under Rule 24(a)(2) in a case involving the right to a parcel of land. In that case, the interest in question was not the right to the land itself, but who had the right to sue to recover the land. 732 F.2d at 265. The plaintiffs had initiated the litigation to declare their title to and to recover possession of a large tract of land in New York. *Id.* at 264. They also sought damages. *Id.* The intervenors made their motion on the grounds that they, not the plaintiffs, had the right to sue to recover the land. *Id.* at 265. The court found that, under those circumstances, the intervenors' ability to protect their interests in the land in question will be "impaired or impeded 'as a practical matter' by a judgment entitling plaintiffs to recover the disputed lands." *Id.* at 266.

13

The same risk is at play in this case. YSL Beauté's rights in the ODLR Marks would be impaired or impeded. This would impact YSL Beauté. As owner of the ODLR Marks, and as provided in the License Agreement, YSL Beauté has the right to decide whether to bring claims for trademark infringement. This includes the right to determine when to sue and when *not* to sue for infringement, as infringement claims that are not meritorious may result in rulings that limit the scope of the trademark owner's rights.[5] Further, EA is a longstanding customer of YSL Beauté, and this trademark/trade dress infringement action against EA, without providing YSL Beauté the opportunity to determine whether it has merit, may impair YSL Beauté's relationship with EA.[6] Therefore, YSL Beauté's rights as trademark owner and as licensee may be impaired should the action proceed.

### D.    **YSL Beauté's Interests Are Not Protected By the Current Parties**

The final prong of the test for intervention as of right is whether the intervenor will be adequately protected by the existing parties in this litigation. The burden on an intervening party wishing to show that its interests may not be adequately protected by an existing party is "minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972). Generally, the party opposing intervention has the burden of persuasion to show adequacy of representation. *See CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991). The test is "whether the [parties'] interests were so similar to those of the [putative intervener] that adequacy of representation was assured." *Brennan*, 260 F.3d at 133.

---

[5] Further, infringement claims against a trademark owner's own customers obviously impact the trademark owner's relationships with such customers.

[6] Parenthetically, although not at issue on this motion, YSL Beauté believes the claim for infringement brought here by ODLR is without merit.

Further, the adequacy of representation often depends on the relief sought. *See, e.g.*, *Oneida*, 732 F.2d at 266. In *Oneida*, the court found that the fact that intervenors and existing plaintiffs "are conflicting claimants to the same lands .... precludes representation of the intervenors' interests by the plaintiffs." *Id.* Likewise, in *Brennan*, the court held that, even though both the defendant-employer and proposed intervenor-employee had an interest in defending the employer's hiring practices, the employer's motives may be different and therefore unlikely to adequately represent the employees' interests. 260 F. at 133.

In the present case, YSL Beauté and ODLR are conflicting claimants to the same rights, namely the right to exercise an ownership interest in the ODLR Marks, and the corresponding right to sue for infringement of those Marks. Further, ODLR has filed claims in arbitration against YSL Beauté and is seeking to terminate YSL Beauté's license based on the very claims ODLR is seeking to advance in this action. YSL Beauté has an interest in having these disputes resolved in arbitration, as was contractually agreed to by YSL Beauté and ODLR. However, EA is not a party to the License Agreement and therefore cannot adequately represent YSL Beauté's interest by seeking to stay this action in favor of the pending AAA arbitration. Only YSL Beauté has the ability to do that. Thus, YSL Beauté's interests will not be adequately protected by the current parties.

## II.    The Motion to Intervene Also Should Be Granted Because YSL Beauté Satisfies the Requirements of Rule 24(b)

Alternatively, YSL Beauté should be permitted to permissively intervene pursuant to Fed. R. Civ. P. 24(b). Rule 24(b) provides that on, timely application, a court may allow an absentee to intervene when "applicant's claim or defense and the main action have a question of law or fact in common" and the intervention will not unduly delay or prejudice adjudication of the rights of the original parties. *New York v. Abraham*, 204 F.R.D. 62, 66 (S.D.N.Y. 2001) (citation

15

omitted); *see also Int'l Design Concepts*, 486 F. Supp. 2d at 235; *United States ex rel. Frank M. Sheesly Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 414-16 (W.D. Pa. 2006); *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 938-39 (D. Md. 2004).

In *Abraham*, the court held that an association was entitled to permissive intervention as a party defendant under Rule 24(b) in a dispute between various states and consumer protection organizations against the U.S. Department of Energy. 204 F.R.D. at 66. The court reasoned that the association's defense had issues of law in common with the main action, *i.e.*, whether the DOE had the authority to delay or cancel implementation of a final rule. *Id.* The court further held that, although the interests of the proposed intervenor and defendants were similar, intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* at 66-67 (citation omitted).

In the present case, the claims raised by ODLR in this action, and the claims raised by both parties in the pending AAA arbitration between YSL Beauté and ODLR, have questions of law and fact in common. Like in *Abraham*, one of the common questions of law and fact here is whether ODLR had the authority to take the action it took, *i.e.*, filing this action against EA. Other common questions of law and fact include: (a) whether YSL Beauté (and consequently EA) is selling products not authorized by ODLR; (b) whether YSL Beauté has cured its alleged breach of the License Agreement, in view of EA's modification of the packaging at issue; and (c) whether ODLR violated its agreement to maintain claims arising out of EA's repackaging of the ODLR products against YSL Beauté only. Further, the common questions of law and fact are arbitrable under the License Agreement, and are currently being litigated in arbitration.

In addition, allowing YSL Beauté to intervene will not unduly delay or prejudice the adjudication of the rights of EA and ODLR. There is no urgency here -- ODLR essentially made the same claims it makes against EA here in the letter it sent to EA more than six months ago, and it seeks no different relief now. As federal courts have often held, "one of the primary reasons why federal law favors arbitration is to resolve cases more quickly and efficiently." *MPA Constr.*, 349 F. Supp. 2d at 939; *see also Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982) ("[f]ederal law evinces a clear preference for arbitration over litigation for private dispute resolution"). In *MPA Construction*, a general contractor moved for leave to intervene and stay action pending arbitration in a case between a subcontractor and insurer regarding payment on a bond obtained by general contractor. The subcontractor opposed intervention on the grounds that intervention would "undoubtedly delay the litigation." *Id*. The court disagreed, noting that "it is a somewhat peculiar stance to assert that delay will cause financial hardship while simultaneously requesting that the court allow full-blown litigation to proceed instead of initiating arbitration." *Id*.

In a case similar to the instant one, a district court in Florida recently granted a motion to intervene under Rule 24(b), where the proposed intervenor sought to stay the litigation pending arbitration. *Petrik v. Reliant Pharm., Inc.*, No. 8:07-cv-1462-T-24 TBM, 2007 WL 3283170, at * 2 (M.D. Fla. Nov. 5, 2007). In that case, the plaintiff, owner of record of a trademark, initiated contractual arbitration proceedings against the licensee of that trademark. The plaintiff had also filed a lawsuit in federal court against the defendant, a sub-licensee of the trademark in which the plaintiff asserted, *inter alia*, federal trademark infringement. *Id*. at * 1. The licensee (and respondent in the pending arbitration) filed a motion to intervene and stay the litigation pending the resolution of the arbitration between the licensee and the plaintiff. *Id*. In granting the

17

licensee's motion to intervene, the court held that there were common questions of law and fact, because if the arbitration resulted in a determination that the licensee *could* sub-license the trademark to defendant, plaintiff's claims against defendant would fail. *Id*. at *2. In addition, the court noted that the licensee's purpose for intervening, to attempt to stay the litigation, was appropriate, in part because arbitration of the claims "involves streamlined proceedings that will result in an arbitral ruling prior to any possible trial date in the instant case." *Id*. (citation omitted).

Similarly, if YSL Beauté were to succeed in the pending AAA arbitration on the grounds that YSL Beauté did not breach the License Agreement by selling EA unauthorized products, or by allowing EA to sell repackaged goods in violation of ODLR's purported trademark rights, then ODLR's claims against EA would fail. Further, the AAA arbitration is already pending, and this Circuit like all federal courts, recognizes the "strong federal policy in favor of arbitration …." *See, e.g.*, *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 234 (2d Cir.) (citation omitted), *cert. denied*, 127 S. Ct. 838 (2006); *National Broadcasting Co. v. Bear Stearns & Co.*, 165 F.3d 184, 190-91 (2d Cir. 1999). In addition, in the cases above, YSL Beauté's intervention would not unduly delay or prejudice the parties to the litigation. For all the foregoing reasons, YSL Beauté should be permitted to intervene under Rule 24(b) because questions of law and fact are common to those in the current litigation, and permitting YSL Beauté to intervene will not cause any undue delay or prejudice to the current parties to the litigation.

## III.   This Action Should Be Stayed in Favor of the Pending AAA Arbitration

Upon YSL Beauté's intervention, this action should be stayed in favor of the pending AAA arbitration. As is clear from the above discussion, the issues in this action are subsumed in

the arbitration pending between YSL Beauté and ODLR. In the arbitration, ODLR has asserted

that YSL Beauté breached the License Agreement by virtue of YSL Beauté's dealings with EA,

the sale of unauthorized products to EA, and the failure to act against EA in respect of its alleged

"infringement" of the ODLR Marks. YSL Beauté seeks, in the pending arbitration, a declaration

that there was no such breach. Section 22 of the License Agreement requires that these and all

disputes between YSL Beauté and ODLR be resolved in arbitration.[7]

     The determination whether a dispute is arbitrable under the Federal Arbitration Act

("FAA") requires the answer to two questions, both of which are answered affirmatively here:

"(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue

comes within the scope of the arbitration agreement." *ACE Capital RE Overseas Ltd. v. Central*

*United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (citation omitted); *see also Birmingham*

*Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 300 (S.D.N.Y. 2008). Under the FAA, "any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...."

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (footnote

omitted). This principle reflects the spirit of the FAA, namely that there is "a strong federal

policy favoring arbitration as an alternative means of dispute resolution." *ACE*, 307 F.3d at 29

(citation omitted).

---

[7] As noted above, there are other disputes between YSL Beauté and ODLR that must be resolved
in arbitration and not by this court. First, ODLR assured YSL Beauté that ODLR would look
"*solely* to YSL Beauté for *any and all* remedies to which ODLR may be entitled as a result of
any [allegedly] unlawful actions of EA and *will not* communicate further with EA regarding this
matter." Ex. 10 to Ederer Decl. (emphasis added). Second, Section 3 of the License Agreement
provides for YSL Beauté to decide whether to sue for trademark infringement, and such suits
must be brought in YSL Beauté's name as owner of the ODLR Marks. The issue of *whether*
ODLR may bypass YSL Beauté, the owner of the ODLR Marks, altogether, and sue EA for any
alleged trademark infringement is itself an arbitrable issue that is currently pending before the
AAA. Ederer Decl., Ex. 2.

Courts have been especially deferential to arbitration agreements where they are broadly written. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649 (2d Cir. 2004) ("any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement" considered broad); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) ("[a]ny dispute, grievance or difference arising out of or relating to the Agreement" considered broad) (citation omitted). Moreover, the Second Circuit has emphasized that "federal policy requires us to construe arbitration clauses as broadly as possible." *Birmingham*, 547 F. Supp. 2d at 300 (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)).

In the present case, the arbitration clause is broad in scope. Section 22 of the License Agreement provides that "*any* controversy or claim arising out of, in connection with, or relating to, [the License Agreement] or breach or performance thereof, shall be determined by arbitration." (emphasis added). Ederer Decl., Ex. 6, ¶ 22. The disputes between ODLR and EA that are the subject of this lawsuit derive from the License Agreement, and YSL Beauté's (and ODLR's) conduct thereunder, as evidenced by the fact that ODLR itself attaches the License Agreement as the first exhibit to its Complaint. Moreover, the only reason EA was selling the ODLR Fragrance Products at issue is because EA purchased them from YSL Beauté. YSL Beauté was either authorized to sell these products to EA or it was not. Further, the notice of breach served by ODLR upon YSL Beauté deals with the very products at issue in their Complaint, and the Statement of Claim filed by YSL Beauté and ODLR in the arbitration implicates all of the issues raised in this action. Even the alleged infringements here are part of the breach notices served by ODLR and are subsumed in the arbitration pleadings.

20

As set forth above, the instant action should be heard in arbitration. Thus, under the

FAA, is should be stayed.[8] The decision in *Petrik*, 2007 WL 3283170, discussed in Point II

above, is directly on point. In that case, the court granted a motion to intervene made by a

trademark licensee, in a lawsuit brought against its sub-licensee by the trademark owner, and

subsequently stayed the litigation pending an arbitration between the trademark owner and the

licensee. *Id*. at * 3. That case both involved the sale of alleged unauthorized product, and the

sale of infringing products. Like the intervenor in *Petrik*, YSL Beauté should be permitted to

intervene, and this action should be stayed in favor of the pending AAA arbitration.

ODLR may argue that because EA's modified packaging is different from its original

packaging, its earlier undertaking to look only to YSL Beauté for the actions of EA is not

binding. This, of course, is not the case, since in its Complaint in this action, ODLR specifically

complains of the same packaging it complained about in January 2008, as well as the modified

packaging. In any event, even if this suit were about the modified packaging, ODLR did not

give YSL Beauté the opportunity to consider whether an infringement action should be filed, as

required by the License Agreement. The Second Circuit has held that, where an arbitration clause

such as this one is broad, "a presumption of arbitrability attaches such that arbitration of even a

collateral matter will be ordered if the claim alleged implicates issues of contract construction or

the parties' rights and obligations under it." *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 69

(2d Cir. 2005) (citation omitted); *see also JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d

Cir. 2004) (recognizing that broad arbitration clauses are "presumptively applicable to disputes

---

[8] The FAA provides in relevant part, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had …." 9 U.S.C. § 3 (2008).

involving matters going beyond the interpret[ation] or enforce[ment of] particular provisions of the contract that contains the arbitration clause.") (citation omitted).

## CONCLUSION

For all the foregoing reasons, it is respectfully urged that this Court grant YSL Beauté's motion to intervene and stay this action in favor of the AAA arbitration pending between YSL Beauté and ODLR.

Dated: New York, New York
       July 21, 2008

                                        Respectfully submitted,

                                        ARNOLD & PORTER LLP


                                        By: _____
                                            Stewart D. Aaron
                                            Louis S. Ederer
                                        399 Park Avenue
                                        New York, NY 10022
                                        Telephone: (212) 715-1068
                                        Facsimile: (212) 715-1399
                                        stewart.aaron@aporter.com
                                        louis.ederer@aporter.com

                                        *Attorneys for Intervenor-Defendant-Counterclaim-
                                        Plaintiff YSL Beauté, Inc.*