UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OSCAR DE LA RENTA, LTD.,

               Plaintiff,

      v.

ELIZABETH ARDEN, INC., d/b/a
"EA FRAGRANCES CO.",

             Defendant.

Civil Action No. 08 CIV 5785 (DLC)

DECLARATION

---

I, Peter M. Brody, declare as follows:

1.      I am a member of Ropes & Gray LLP, counsel to plaintiff Oscar de la Renta Ltd. ("ODLR") in this action. I am admitted *pro hac vice* in this action.

2.      I submit this declaration in connection with ODLR's accompanying Memorandum in Opposition to Defendant's Motion to Dismiss ("ODLR Brief"), in order to: (i) put before the Court certain correspondence, discussed in the ODLR Brief, that is germane to the alternative relief sought by defendant Elizabeth Arden, Inc., *i.e.*, a stay of this action pending completion of the arbitration between ODLR and YSL Beauté, Inc., and (ii) for the Court's convenience, summarize the goods identified in the various trademark registrations cited in ODLR's Complaint in this action and discussed in the ODLR Brief.

3.      Accordingly, a chart prepared at my direction from the United States trademark registrations cited in the Complaint, showing the goods identified in each of those registrations, which is correct to the best of my knowledge, is attached hereto as Exhibit A, and copies of correspondence, dated August 15, 2008, August 20, 2008, and August 27, 2008, among the

American Arbitration Association and counsel to the parties to the arbitration, are attached hereto as collective Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 29th day of August, 2008.

_____*/s/ Peter M. Brody*_____
Peter M. Brody

EXHIBIT A

**United States Trademark Registrations Cited In Complaint**

| Reg. No. | Mark | Registrant | Goods |
|---|---|---|---|
| 0922367 | *Oscar de la Renta* | Oscar de la Renta, Ltd. | watches; jewelry |
| 1081451 | **OSCAR** | YSL Beauté, Inc. | perfume |
| 1085216 | **OSCAR DE LA RENTA** | YSL Beauté, Inc. | perfume |
| 1334456 | **OSCAR DE LA RENTA** | Oscar de la Renta, Ltd. | women's apparel, namely, coats, blouses, skirts, dresses and scarves; and men's apparel, namely, constructed suits, leisure suits, scarves, shirts, shorts, ties, top coats, overcoats, gloves, hats and underwear |
| 1950895 | **OSCAR DE LA RENTA** | Oscar de la Renta, Ltd. | optical products, namely eyewear consisting of eyeglasses, eyeglass frames, and eyeglass lenses |
| 1957411 | **OSCAR DE LA RENTA** | Oscar de la Renta, Ltd. | umbrellas and traveling bags |
| 2119455 | *Oscar de la Renta* | Oscar de la Renta, Ltd. | women's clothing including evening dresses, dresses, skirts, shirts, blouses, caps, robes, belts, panty hose, undershirts, scarves, shoes, underwear, warm-up suits, body suits, t-shirts, sweatshirts, sweat pants, sweat suits, swimwear, jeans, leggings, socks, lingerie and coordinated and related outerwear, namely, coats, jackets, blazers, vests, sweaters and rainjackets; men's apparel including constructed suits, scarves, shirts, shorts, ties, gloves, hats, underwear, shoes, warm-up suits, body suits, t-shirts, sweatshirts, sweat pants, sweat suits, sweat shorts, jogging suits, swimwear, jeans, socks, caps, robes, belts, undershirts and outerwear, namely, coats, jackets, blazers, vests, sweaters and rain jackets |

| Reg. No. | Mark | Registrant | Goods |
|----------|------|-----------|-------|
| 2132134 | OSCAR<br>*Oscar de la Renta* | Oscar de la Renta, Ltd. | women's sportswear consisting of knit and woven tops, including tee-shirts, fleece shirts and blouses, fleece pants, slacks, jeans and related jeanswear, namely, tops and bottoms made of denim fabric, skirts, shorts, legging for casual wear, coordinated and related outerwear, namely, raincoats, jackets, coats; knits, namely, tops, bottoms, and dresses, coats, sweaters, suits, dresses, blazers, jackets and vests, lingerie, and scarves; men's sportswear consisting of jackets, blazers, pants, button down shirts, banded collar shirts, vests, ties, belts, knits, rain jackets, socks, outerwear, sweaters, swim trunks, shorts, bags, caps, shoes and denim |
| 2510354 | *[design mark]* | Oscar de la Renta, Ltd. | handbags; shoes and belts for clothing |
| 2553215 | O S C A R *by Oscar de la Renta* | Oscar de la Renta, Ltd. | eyeglasses |
| 2702388 | *[design mark]* | Oscar de la Renta, Ltd. | potpourri; candles |
| 2928221 | **OSCAR DE LA RENTA** | Oscar de la Renta, Ltd. | scented candles |
| 3046554 | **OSCAR DE LA RENTA** | Oscar de la Renta, Ltd. | furniture; fabrics, namely, upholstery fabrics, fabrics for the manufacture of bed sheets, bed blankets, bed spreads and table linens |
| 3108953 | OSCAR DE LA RENTA PROFILE | Oscar de la Renta, Ltd. | men's suits and sport coats |

ii

| Reg. No. | Mark | Registrant | Goods |
|---|---|---|---|
| 3283357 |  | Oscar de la Renta, Ltd. | bed spreads, quilts, duvets, pillow cases, shams, bed skirts, bed sheets, bed linens, bed pads, bed blankets, blanket throws, comforters, cushion covers, draperies, table linens; table linens, namely, table cloths, placemats, napkins, runners and unfitted fabric covers |
| 3303388 |  | Oscar de la Renta, Ltd. | women's clothing, namely, blouses, shirts and t-shirts, sweat shirts, tops, halter tops and tank tops, fleece pullovers, pants, sweat pants, slacks and jeans, skirts, shorts, leggings, coats, sweaters, suits, dresses, blazers, jackets, leather jackets and denim jackets, vests, lingerie, bras, panties, camisoles, shoes, scarves, swimwear and coverups, sleepwear, robes, nightgowns, night shirts, pajamas, sleep shirts, loungewear; men's clothing, namely, jackets, blazers, pants, shirts, vests, ties, belts, rain jackets, socks, sweaters, swim trunks, shorts, caps, shoes, swimwear; children's and infant clothing, namely, shirts and t-shirts, pants, jean skirts, shorts, leggings, coats, jackets, and swimwear |
| 3307716 |  | Oscar de la Renta, Ltd. | handbags, totes, wallets, coin purses |
| 3352817 | **OSCAR DE LA RENTA** | Oscar de la Renta, Ltd. | pillows, mattresses and fitted fabric covers<br><br>bed spreads, quilts, duvets, pillow cases, shams, bed skirts, bed sheets, bed linens, bed pads, bed blankets, |

iii

| Reg. No. | Mark | Registrant | Goods |
|----------|------|------------|-------|
|          |      |            | blanket throws, comforters, cushion covers, draperies, table linens; table linens, namely, table cloths, placemats, napkins, runners and unfitted fabric covers |

EXHIBIT B

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

August 15, 2008

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

VIA ELECTRONIC MAIL

Louis S. Ederer, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

William R. Kleysteuber
Ropes & Gray LLP
700 12th Street NW
Suite 900
Washington, DC  20005-3948

Re: 13 133 01389 08
    YSL Beaute, Inc.
    and
    Oscar de la Renta, Ltd.

Dear Parties:

This will advise the parties the Association has appointed Judge E. Leo Milonas and Philip D. O'Neill, Jr. Judge Milonas will serve as the chairperson in this matter. Enclosed please find the arbitrators' duly executed Notice of Appointments and Notice of Compensation Arrangements.

Mr. O'Neill has made an enclosed disclosure. Please advise the Association of any objections to the appointment of Mr. O'Neill within five business days. The arbitrators shall not be copied on any comments related to the disclosures.

If any objections to this arbitrator's appointment are raised, the other party may respond within **five** business days.  The AAA will make a determination regarding the arbitrator's continued service in accordance with the Rules.

Also, in an email dated July 31, 2008, Mr. Brody stated the following;

> "As noted on the form, we understand that AAA reserves the right to select arbitrators who were not on this list if you cannot form a panel based on the completed lists submitted by the parties, but we nevertheless would very much appreciate it if AAA would instead consider providing a supplemental list for selection, in view of the magnitude and complexity of this case and the need for three arbitrators"

Inasmuch as we were unable to appoint three arbitrators from the lists provided, we ask claimant at this time if they are in agreement to Mr. Brody's statement above. Kindly advise the undersigned on or before **August 20, 2008**, so that the AAA can proceed forward with either a supplemental list, or the administrative appointment of the third arbitrator.

Sincerely,

Jennifer Metz
Case Manager
401 431 4795
MetzJ@adr.org

*Supervisor Information: Joyce A. Sutton, 401 431 4730, Suttonj@adr.org*

Encl.

## AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

**Re: 13 133 01389 08**
    **YSL Beaute, Inc.**
    **and**
    **Oscar de la Renta, Ltd.**

### NOTICE OF APPOINTMENT

**To:**    Philip D. O'Neill, Jr., Esq.

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☑ | ☐ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |

**9.** Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? ☐ ☑

**10.** Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? ☐ ☑

**11.** Have you ever sued or been sued by either party or its representative? ☐ ☑

**12.** Do you or your spouse own stock in any of the companies involved in this arbitration? ☐ ☑

**13.** If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? ☐ ☑

**14.** Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? ☑ ☐

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐ I have conducted a check for conflicts and have **nothing to disclose.**

☑ I have conducted a check for conflicts and have **made disclosures on an attached sheet.**

### THE ARBITRATOR'S OATH

State of Massachusetts ⎫
County of Suffolk ⎭ SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: _August 7, 2008_    Signed: _____

Sworn before me this _7th_ day of _August_ , 2008

_Marie M. Alsterberg_
_Notary Public_

MARIE M. ALSTERBERG
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 22, 2010

## AMERICAN ARBITRATION ASSOCIATION

Re:     **13 113 01389 08**
        **YSL Beauté, Inc.**
        **And**
        **Oscar de la Renta**

### DISCLOSURE STATEMENT

An initial computerized conflict check, performed by my firm's administrators, disclosed in a conflict report the following with respect to names of the respective parties, their legal representatives, and the list of individuals/entities provided by the AAA.

1.     **YSL Beauté, Inc.** - - This entity and/or an affiliate brought an action in 2007 against a client of this firm under the Lantham Act for trademark infringement involving a perfume. I am informed that aspect of the case settled earlier this year. Boucheron and PPR are listed in connection with this matter. PPR is or was identified as the ultimate parent at the time. The litigation continues with claims by both YSL and the firm's client against the supplier of the firm's client. Other entities with PPR appearing in their name in the report seem to be sound-alike names (e.g., involving cable acquisitions).

2.     **Arnold and Porter** - - A former partner in a predecessor firm of this firm represented A&P on a matter over 14 years ago. The matter was closed a few months after it was opened. There is a 2006 matter for a client in which the law firm is identified involved in an insurance context. There is at least one other recent matter where this law firm was acting for a client opposite a client of this firm.

3.     **Ropes & Gray** - - I was a summer associate at Ropes & Gray in 1976 in their Boston office. There are matters where this law firm appears or has appeared opposite to Ropes & Gray on behalf of clients. I believe the last time I appeared as an advocate on behalf of a client in litigation where Ropes & Gray attorneys were opposite me is approximately 20 years ago. There are other matters where members of this firm have acted for Ropes & Gray, including as local counsel.

4.     **Peter Brody** - - An individual with the name of Peter Brody appears in this firm's records in a trust and estate matter as a stepson. It appears to be simply a sound-alike name.

5.     **L'Oréal** - - This company has been repeatedly adverse to a client of this law firm in litigation. I am informed there is currently one matter where L'Oréal is adverse to that client in litigation that is on appeal. There are or have been other matters where L'Oréal is identified in an adverse position or as a co-defendant with clients of this firm. Two matters involved the trade style name Interbeauty.

6.     **Linda R. Carney** - - An individual named Linda Carney was in an adverse position to clients of the firm a couple of years ago in what appears to be a sound-alike name.

7.     **Pinault Printemps-Redoute** - - Is listed as an assignee to a client in a friendly position in a patent matter a couple of years ago.

8.    **Elizabeth Arden, Inc.** - - has been in an adverse position to two clients of this firm in the past.

9.    **Richard E. Ellis & Associates** - - There are multiple matters for various clients in which CB Richard Ellis Company is listed in an adverse or neutral position to clients of the firm in what appear to be real estate brokering-related activities.  There are also closed matters involving what appear to be sound-alike names of individuals.

10.    **Joseph X. Spellman** - - has been a client of the firm in the past, with no active matters currently.

11.    **James Ragsdale** is identified as affiliated with a client of this firm, but it appears to be a sound-alike name.

I have had no involvement personally with any of the above matters, except as specifically indicated above.

I will not be investigating any of the identified matters or any future matters that are disclosed by supplement absent specific requests by the parties to do so.

None of these matters would impact my impartiality or ability to act fairly as an arbitrator in this matter.


Dated: August 7, 2008

BOS 632469.1

# AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

Re: 13 133 01389 08
    YSL Beaute, Inc.
    and
    Oscar de la Renta, Ltd.

## Notice of Compensation Arrangements

**To:**    Philip D. O'Neill, Jr., Esq.

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are available in Neutrals eCenter at www.adr.org. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association <u>prior to accepting your appointment</u> so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

This matter is being administered under the LCC procedures of the Commercial Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

| | | |
|---|---|---|
| Hearing Time: | $545.00 | per hour |
| Study Time: | $545.00 | per hour |
| Travel Time: | "No travel time or cancellation fees typically charged" | |
| Cancellation: | "No travel time or cancellation fees typically charged" | |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

**Deposits and Payment**

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager prior to exhausting the current deposit. The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

**Failure to Disclose and Forfeiting Compensation**

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

========================================================================

**ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION**

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _____     Date: _____

Firm T.I.N. # 05-0135015

# AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

Re: 13 133 01389 08
   **YSL Beaute, Inc.**
   **and**
   **Oscar de la Renta, Ltd.**

## NOTICE OF APPOINTMENT

**To:**   E. Leo Milonas, Esq.

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? ☐ ☑

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? ☐ ☑

11. Have you ever sued or been sued by either party or its representative? ☐ ☑

12. Do you or your spouse own stock in any of the companies involved in this arbitration? ☐ ☑

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? ☐ ☑

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? ☐ ☑

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☑ I have conducted a check for conflicts and have **nothing to disclose.**

☐ I have conducted a check for conflicts and have **made disclosures on an attached sheet.**

### THE ARBITRATOR'S OATH

State of New York
County of New York } SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: 8/8/08          Signed: _____

Sworn before me this _____ day of _____ , 20 ___

# AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

Re: 13 133 01389 08
    YSL Beaute, Inc.
    and
    Oscar de la Renta, Ltd.

## Notice of Compensation Arrangements

**To:**    E. Leo Milonas, Esq.

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are available in Neutrals eCenter at www.adr.org. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association <u>prior to accepting your appointment</u> so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

This matter is being administered under the LCC procedures of the Commercial Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

|                 |          |          |
|-----------------|----------|----------|
| Hearing Time:   | $750.00  | per hour |
| Study Time:     | $750.00  | per hour |
| Travel Time:    |          |          |
| Cancellation:   |          |          |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

## Deposits and Payment

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager prior to exhausting the current deposit. The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

## Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

=================================================================

### ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _____    Date: __8/8/08__

# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

212.715.1102
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

August 20, 2008

**By E-mail (metzj@adr.org)**
Ms. Jennifer Metz
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:    *YSL Beauté, Inc. v. Oscar De La Renta, Ltd.*
Case No. 13 133 01389 08

Dear Ms. Metz:

We represent YSL Beauté, Inc. ("YSL Beauté") in the above-referenced case. We write in response to your August 15, 2008 letter advising the parties of the AAA's appointment of Judge E. Leo Milonas and Philip D. O'Neill, Jr., Esq. to the panel of arbitrators in this proceeding.

YSL Beauté must now respectfully object to Mr. O'Neill's appointment to the panel of arbitrators. This objection is based on Mr. O'Neill's disclosure, received by us for the first time with your August 15 letter, that L'Oréal, the parent company of YSL Beauté, "has been repeatedly adverse to a client of [his] law firm in litigation," and that "there is currently one matter where L'Oréal is adverse to a client of [his] law firm in litigation that is on appeal." *See* Disclosure Statement of Philip D. O'Neill, Jr., Esq., annexed as Exhibit A. While YSL Beauté was aware that Mr. O'Neill's firm had been adverse to YSL Beauté in a single litigation matter in 2007, a matter now closed as between YSL Beauté and Mr. O'Neill's firm's client, we were not aware of his firm's repeated and ongoing adverse position to YSL Beauté's parent until we received a copy of his disclosures.

"The 'basic, fundamental principles of justice require complete impartiality on the part of the arbitrator and mandate that the [arbitration] proceedings be conducted without any appearance of impropriety'". *Uniformed Firefighters Ass'n v. City of Long Beach*, 307 A.D.2d 365, 366 (2d Dep't. 2003) (citations omitted). While we are not suggesting that Mr. O'Neill could not be impartial in this proceeding, our client and its parent company, in order to avoid even the appearance of partiality, are not prepared to overlook Mr. O'Neill's recent disclosures. Accordingly, we must respectfully request that Mr. O'Neill be stricken from the panel of arbitrators. We trust that, as indicated in the enclosures to your August 15 letter, Mr. O'Neill will not be informed of this request, or of YSL Beauté's objection to his appointment.

As for Mr. Brody's request that a supplemental list of proposed arbitrators be provided to counsel, rather than the AAA simply selecting the remaining panelist(s), we concur with this

# ARNOLD & PORTER LLP

Ms. Jennifer Metz
August 20, 2008
Page 2

suggestion.  We further concur with Mr. Brody's observation, made at the first case management conference, that, to the extent possible, the candidates presented have fashion industry and/or trademark licensing experience.

We stand ready to conference this matter at your convenience.

Respectfully,

ARNOLD & PORTER LLP

By: *Louis S. Ederer*

Louis S. Ederer

cc:     Peter M. Brody, Esq.

EXHIBIT A

### AMERICAN ARBITRATION ASSOCIATION

Re:    **13 113 01389 08**
       **YSL Beauté, Inc.**
       **And**
       **Oscar de la Renta**

### DISCLOSURE STATEMENT

An initial computerized conflict check, performed by my firm's administrators, disclosed in a conflict report the following with respect to names of the respective parties, their legal representatives, and the list of individuals/entities provided by the AAA.

1.     **YSL Beauté, Inc.** - - This entity and/or an affiliate brought an action in 2007 against a client of this firm under the Lantham Act for trademark infringement involving a perfume. I am informed that aspect of the case settled earlier this year. Boucheron and PPR are listed in connection with this matter. PPR is or was identified as the ultimate parent at the time. The litigation continues with claims by both YSL and the firm's client against the supplier of the firm's client. Other entities with PPR appearing in their name in the report seem to be sound-alike names (e.g., involving cable acquisitions).

2.     **Arnold and Porter** - - A former partner in a predecessor firm of this firm represented A&P on a matter over 14 years ago. The matter was closed a few months after it was opened. There is a 2006 matter for a client in which the law firm is identified involved in an insurance context. There is at least one other recent matter where this law firm was acting for a client opposite a client of this firm.

3.     **Ropes & Gray** - - I was a summer associate at Ropes & Gray in 1976 in their Boston office. There are matters where this law firm appears or has appeared opposite to Ropes & Gray on behalf of clients. I believe the last time I appeared as an advocate on behalf of a client in litigation where Ropes & Gray attorneys were opposite me is approximately 20 years ago. There are other matters where members of this firm have acted for Ropes & Gray, including as local counsel.

4.     **Peter Brody** - - An individual with the name of Peter Brody appears in this firm's records in a trust and estate matter as a stepson. It appears to be simply a sound-alike name.

5.     **L'Oréal** - - This company has been repeatedly adverse to a client of this law firm in litigation. I am informed there is currently one matter where L'Oréal is adverse to that client in litigation that is on appeal. There are or have been other matters where L'Oréal is identified in an adverse position or as a co-defendant with clients of this firm. Two matters involved the trade style name Interbeauty.

6.     **Linda R. Carney** - - An individual named Linda Carney was in an adverse position to clients of the firm a couple of years ago in what appears to be a sound-alike name.

7.     **Pinault Printemps-Redoute** - - Is listed as an assignee to a client in a friendly position in a patent matter a couple of years ago.

8.    **Elizabeth Arden, Inc.** - - has been in an adverse position to two clients of this firm in the past.

9.    **Richard E. Ellis & Associates** - - There are multiple matters for various clients in which CB Richard Ellis Company is listed in an adverse or neutral position to clients of the firm in what appear to be real estate brokering-related activities.  There are also closed matters involving what appear to be sound-alike names of individuals.

10.    **Joseph X. Spellman** - - has been a client of the firm in the past, with no active matters currently.

11.    **James Ragsdale** is identified as affiliated with a client of this firm, but it appears to be a sound-alike name.

I have had no involvement personally with any of the above matters, except as specifically indicated above.

I will not be investigating any of the identified matters or any future matters that are disclosed by supplement absent specific requests by the parties to do so.

None of these matters would impact my impartiality or ability to act fairly as an arbitrator in this matter.


Dated: August 7, 2008

BOS 632469.1



ROPES & GRAY LLP

1211 AVENUE OF THE AMERICAS    NEW YORK, NY 10036-8704    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    TOKYO    WASHINGTON, DC    www.ropesgray.com

August 27, 2008

Peter M. Brody
202-508-4612
202-383-7777 fax
peter.brody@ropesgray.com

**BY E-MAIL**

Jennifer Metz
Case Manager
American Arbitration Association, Inc.
950 Warren Avenue
East Providence, RI 02914

Re:    *YSL Beauté, Inc. v. Oscar de la Renta, Ltd.*, case no. 13 133 01389 08

Dear Ms. Metz:

I write in response to your e-mail of August 20, 2008, to set forth the comments of Oscar de la Renta Ltd. ("ODLR") regarding the objection of YSL Beauté Inc. to the appointment of Philip D. O'Neill, Jr., as an arbitrator in the captioned matters. For the following reasons, ODLR sees no basis for YSL Beauté's objection and does not believe Mr. O'Neill should be removed from the panel.

The law imposes a heavy burden on a party seeking to disqualify an arbitrator for alleged partiality. "Unlike a judge, who can be disqualified 'in any proceeding in which his impartiality *might* reasonably be questioned,' an arbitrator is disqualified only when a reasonable person, considering all of the circumstances, 'would *have* to conclude' that an arbitrator was partial to one side. *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (quoting *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984)) (emphasis in *Applied Indus. Materials*).

YSL Beauté's sole stated concern about Mr. O'Neill is that he is a member of a law firm that represents a client that has been adverse to YSL Beauté's current ultimate parent company, L'Oréal, on various occasions, including in a pending dispute. In Mr. O'Neill's disclosure, however, Mr. O'Neill has assured the parties that this fact will not "impact my impartiality or ability to act fairly as an arbitrator in this matter."

Indeed, even YSL Beauté's counsel admits that "we are not suggesting that Mr. O'Neill could not be impartial in this proceeding." That admission alone should end the matter. Mr. Ederer contends, however, that his client nonetheless is concerned about "an appearance of partiality."

ROPES & GRAY LLP

Jennifer Metz                             - 2 -                         August 27, 2008

Any such concern on the part of YSL Beauté is misplaced, for several reasons.

First, L'Oréal is not a party in arbitration – it is merely a corporate parent of one. Such a
relationship, by itself, should not warrant disqualification. Further – and it is surprising that Mr.
Ederer neglects to mention this – L'Oréal only just acquired YSL Beauté on June 30, 2008.
Throughout much of the time period relevant to this dispute, which stretches back over a decade,
YSL Beauté was owned by an unrelated third party, Gucci Group. Thus, L'Oréal's connection to
this matter is even more tenuous than Mr. Ederer says.

Second, Mr. O'Neill does not represent, and there thus is no reason to believe, that he has been
personally involved in any of his firm's engagements adverse to L'Oréal , nor does he indicate that
he has any substantive knowledge of them. According to its web site, Mr. O'Neill's firm numbers
600 lawyers across 11 offices in the United States and the United Kingdom. Given that, the firm's
representation of a client adverse to L'Oreal "does not raise an appearance of partiality." *W & HM
Realty Co., LLC v. 853 Seventh Ave. Owners, LLC*, 789 N.Y.S.2d 32, 32-33, 15 A.D.3d 186, 187,
2005 N.Y. Slip Op. 00646 (App. Div. 1st Dep't 2005) (an arbitrator is not disqualified merely
because he happens to be employed by a large real estate firm, a different division of which had
provided services to a party in the arbitration).

In addition, we note that Mr. O'Neill is a seasoned arbitrator with directly relevant experience in
arbitrating licensing and contractual disputes such as this one. AAA already has had difficulty
completing the panel, with one member remaining to be selected. Having to select two more
members will only complicate and potentially further delay this proceeding.

In sum, there is no good reason to remove Mr. O'Neill from the panel, and every good reason to
retain him. ODLR therefore asks that the AAA overrule YSL Beauté's objection and proceed with
dispatch to provide the parties with a supplemental list of candidates for the third position on the
panel.

In the latter connection, I wish to note my disagreement with a comment in Mr. Ederer's letter. He
suggests that, at the first case management conference, I stated that "to the extent possible, the
candidates presented have fashion industry and/or trademark licensing experience." In fact, that
statement was made by Mr. Ederer, not me, and it echoed the position set forth in YSL Beauté's
demand for arbitration with regard to qualifications of the arbitrators. What *I* stated at the initial
conference is that ODLR does *not* believe it is necessary that the arbitrators have "fashion industry
and/or trademark licensing experience" and that any competent arbitrator with experience in
arbitrating substantial contractual disputes would be potentially suitable. ODLR continues to
believe this.

ROPES & GRAY LLP

Jennifer Metz                                    - 3 -                                    August 27, 2008


ODLR appreciates the continuing attention of the AAA to this matter.

Sincerely,

*Peter M. Brody* / CS

Peter M. Brody

PMB:pmb

cc:      Louis S. Ederer, Esq.